## In re LEWIS et al.

(District Court, D. Washington, N. D. October 23, 1897.)

1. OFFICER EXCEEDING HIS AUTHORITY — TO WHOM ANSWERABLE — CRIMINAL LIABILITY.

An officer who, in the performance of what he conceives to be his official duties, transcends his authority, and invades private rights, is answerable therefor to the government under whose appointment he acts, and to individuals injured by his action; but where there is no criminal intent he is not liable to answer the criminal process of another government.

2. HABEAS CORPUS—WRIT AGAINST STATE OFFICER—FEDERAL COURT—EXTENT OF INQUIRY.

Federal courts have authority in habeas corpus proceedings to inquire into the guilt or innocence of persons committed on preliminary examination by a state tribunal on a criminal charge for acts done in the service of the United States, so far as to determine whether the acts were done wantonly and with criminal intent.

3. CHARGE OF ROBBERY—SUFFICIENCY OF EVIDENCE.

A charge of robbery cannot be sustained by evidence that the defendants participated in a search of premises and seizures made under a warrant technically insufficient, and that they acted in excess of the authority given by the warrant.

The petitioners, being special employés of the treasury department of the United States, assisted in searching the premises of one Yee Gee, at Port Townsend, under a search warrant issued by a United States commissioner. At the time of the search, certain papers, supposed to contain incriminating evidence against Yee Gee, were seized. Afterwards the petitioners were arrested on a charge of robbery, and upon a preliminary examination were committed on that charge in default of bail. The United States district attorney sued out a writ of habeas corpus in their behalf. Upon the facts appearing by the sheriff's return and testimony, ordered that the petitioners be discharged from custody.

Wm. H. Brinker, U. S. Atty., for petitioners.

A. R. Colman and R. W. Jennings, for respondent.

HANFORD, District Judge. The motion in behalf of the respondents to remand will be denied, and I shall order that the petitioners be discharged from custody. In deciding this case, I do not mean to say that the warrant which Mr. Kiefer issued was a lawful warrant, nor that the proceedings under it were proper proceedings. I do not mean to say that the petitioners were lawfully discharging their official duties in what they did. In my opinion, the warrant itself was improvidently and erroneously issued, and the proceedings were all ill-advised, and conducted with bad judgment. But where an officer, from excess of zeal or misinformation, or lack of good judgment in the performance of what he conceives to be his duties as an officer, in fact transcends his authority, and invades the rights of individuals, he is answerable to the government or power under whose appointment he is acting, and may also lay himself liable to answer to a private individual who is injured or oppressed by his action; yet where there is no criminal intent on his part he does not become liable to answer to the criminal process of a different government. With our complex system of government, state and national, we would be in an intolerable condition if the state could put in force its criminal laws to discipline United States officers for the manner in which they discharge their duties. Or, take it the other way, if the government of the United States should prosecute as criminals sheriffs and other ministerial officers, justices of the peace, and judges of superior courts for errors of judgment, or ignorance, causing blunders in the discharge of their duties, it would bring on a condition of chaos in a short time.

Counsel is mistaken, I think, in assuming that the court in this proceeding is so limited in its powers that it cannot consider the question of whether the defendants are guilty or not guilty of the charge of robbery upon which they were committed. It is true that this court could never adjudicate that question finally, so as to convict and punish these men for robbery if they were robbers; but in a proceeding of this kind it is absolutely necessary for the court to consider the question so far as to determine whether the officers acted wantonly and with criminal intent, or whether, in so far as their acts may be regarded as wrongful, they were mere errors of judgment. Take, for instance, the Neagle Case, 10 Sup. Ct. 658. It is not to be conceived that, if Neagle had actually committed a murder, the federal court would have shielded him from punishment. Suppose that Judge Terry had made no assault upon Judge Field, and there were no such appearances as to give reasonable ground to a person in the situation that Neagle was in to suppose that it was necessary to use a deadly weapon in defense of Judge Field, and that while acting as a protector for Judge Field, in accordance with instructions from the attorney general of the United States, he had wantonly shot and killed Judge Terry, or some other man, so that his act would have been an actual murder; certainly Judge Sawyer and the supreme court of the United States would not have justified the use of the writ of habeas corpus to shield him from punishment. If the marshal of the United States, whose duty it is to attend ses-

sions of this court, and to preserve order, should kill a man to prevent him from killing the judge on the bench, or any other officer of the court, while in session, the court would go to the last extremity in protecting the marshal against prosecution or persecution for that act. But suppose, while the court is in session, the marshal, without any justification or excuse, wantonly kills a man in the court room, this court would not be competent to deal with him according to his deserts, for it could do no more than punish him for contempt; but he should not, on that ground, be exempt from punishment for such criminal act. This court would not issue its process to shield him from prosecution before the tribunal having jurisdiction. Recently a man supposed to be guilty of a number of murders in Australia was apprehended on board of a vessel before she arrived at her port of destination in this country. If the officer in pursuit of the fugitive in that case had committed a mistake in identifying the person, and had arrested a man for whose arrest the warrant gave him no authority, and had taken him, with his goods and property, forcibly from the vessel, then, in harmony with the argument for the respondent in this case, he might be held guilty of piracy, the punishment for which is death; for if, in this case, the seizure of papers and property not authorized by Judge Kiefer's warrant makes a case of robbery, then the forcible abduction of a man, and the taking of his personal effects on board a vessel on the high seas, without a lawful warrant, would make out a case of piracy. Marshals and sheriffs very often arrest persons whom they have no right to arrest. In such cases they may subject themselves to censure, and, if substantial injury is done, even where the element of bad faith is lacking, the officer may subject himself to liability for damages to the injured party; but an officer in such case cannot be subjected to punishment as a criminal for mere errors, or mistakes, or defects in the warrant which he attempts to serve. It would be a monstrous thing if an officer who should, by mistake, take into custody a person other than the one designated by a warrant, could be subjected to punishment as for a felonious kidnapping or abduction of a person.

The undisputed and established facts in this case are that a warrant was issued by an officer authorized by the laws of the United States to issue warrants in proper cases. These petitioners were in the service of the government of the United States, and were acting in and about matters which pertained to their duties as public officers. In going with the deputy marshal, who had this warrant issued to him, they went by request, and with his sanction; and all that they did was in an official capacity, without any private or individual malice, and without any felonious intent to commit a robbery or to do any criminal act. According to the evidence, they did things which, in my judgment, they had no right to do. It is my opinion that they went beyond the line to which the warrant authorized them to go, and pried into matters which the warrant did not authorize them to pry into. All that is plain enough, but the felonious intent necessary to make robbers of them is entirely lacking. If they were guilty of robbery, Judge Kiefer is a robber, and

Deputy Marshal McLaughlin is a robber, and Mr. Cullom is a robber. Why pick out Mr. Lewis and Mr. Gardner as the robbers? They were simply acting in concert with others who were more in the position of chief actors than they were. The bare statement that these men may be sent to the state penitentiary under conviction for robbery shows that the idea is an absurdity. The charge of robbery cannot be sustained by evidence that they participated in a search of premises and seizures made under a warrant which is technically insufficient, and that they acted in excess of the authority which the warrant gave. There being no ground for a criminal charge under the laws of the state of Washington, it is the duty of this court to protect the petitioners, as federal officers, against further prosecution for acts done under color of authority in the performance of official duty. These are my views of the case, and an order will be made accordingly, discharging the petitioners.