### CAMPBELL v. WAITE.

(Circuit Court of Appeals, Eighth Circuit. June 13, 1898.)

No. 1,018.

1. HABEAS CORPUS—PRISONER HELD BY STATE FOR ACTS DONE UNDER FEDERAL AUTHORITY.

The federal courts may, on habeas corpus, release a person after his conviction by a state court, as well as before trial, when he is in custody for an act done in pursuance of a law of the United States lawfully enacted.

**2. SAME.**

Rev. St. § 753, was designed to give relief to one in custody under a state law, not only when a state statute expressly imposes a penalty for executing a law of the United States or the process of its courts, but also when the state law is general in its terms, and applicable to all persons, and one is in custody under color thereof for an act which was in fact done in pursuance of federal authority.

**3. SAME.**

When, on habeas corpus, a person claims immunity from arrest and imprisonment, on the ground that he is held for an act done under federal authority, the federal courts may go behind the indictment or information found in the state court, and ascertain by independent inquiry whether the act which furnished the sole basis for the charge was in truth done in pursuance of a law of the United States.

**4. SAME.**

The arrest, under state authority, of federal officers or other persons for acts lawfully done in discharge of their duties under federal laws, presents a case of urgency, which warrants a discharge of the prisoner on habeas corpus without remitting him to the slower remedy of an appeal to the United States supreme court.

Appeal from the District Court of the United States for the Northern District of Iowa.

Edward F. Waite, the appellee, filed an application for a writ of habeas corpus in the United States district court for the Northern district of Iowa, in which he alleged, in substance, that he was unlawfully restrained of his liberty by A. C. Campbell, the sheriff of Howard county, Iowa, under a warrant issued by the district court of said county; that he was held in custody and wrongfully deprived of his liberty "for an act done in pursuance of the laws of the United States"; and that the restraint so imposed "was in violation of the constitution and laws of the United States, the courts of the state of Iowa having no jurisdiction to arrest or imprison him." A writ of habeas corpus having been duly issued and served, said A. C. Campbell, the appellant, made a return to the writ, stating, in substance, that he held the said Waite in custody by virtue of a warrant of commitment issued on a judgment of the district court of Howard county, Iowa, which was rendered on June 22, 1895, and that said judgment after its rendition had been duly affirmed on appeal by the supreme court of the state of Iowa. Attached to said return were duly-certified copies of the judgment of the district court of Howard county, of the indictment on which the said Waite had been tried, of the judgment of affirmance by the supreme court of the state, and of the warrant of commitment under which the accused was held.

The indictment appears to have been based on section 4767 of the Code of Iowa of 1897, quoted below in the margin,[1] and charged, in substance, that E. F. Waite, at and within said county of Howard, on or about the 4th day of October, A. D. 1894, did willfully, maliciously, unlawfully, and feloniously threaten verbally to accuse one D. P. Andrus, a person then and there being and residing in Howard county, Iowa, of the crime of perjury, and to have him arrested and punished therefor, in order to compel the said Andrus to do an act against his will. To the aforesaid return a reply was filed by the petitioner, wherein he admitted that he had been indicted, tried and convicted in the district court of Howard county, Iowa; that the judgment of said court had been subsequently affirmed by the supreme court of the state (70 N. W. 596); and that he was then in custody by virtue of a warrant issued on said judgment. He averred, however, in substance, that

[1] If any person, either verbally or by any written or printed communication, maliciously threaten to accuse another of a crime or offense, or to do any injury to the person or property of another with intent to extort any money or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will, he shall be imprisoned in the penitentiary not more than two years or be fined not exceeding five hundred dollars.

the judgment of the state court, by virtue of which he was held in custody, was utterly null and void and of no force or effect, because the acts complained of in the indictment on account of which he had been accused and convicted were acts which he had done and performed as a special examiner of pension claims in the discharge of duties that were imposed upon him as such examiner by the laws of the United States. In support of this general averment, the petitioner alleged, in substance, the following facts: That, at the time of the commission of the alleged offense against the laws of the state of Iowa, he was a special examiner of the pension bureau, and, as such, had authority to administer oaths and take affidavits in the investigation of claims pending before the commissioner of pensions, and was charged with the duty of examining pension claims and aiding in the prosecution of persons appearing on such investigations to be guilty of fraud in presenting or procuring the allowance of claims for pension; that one Daniel P. Andrus, of Howard county, Iowa, was at the time a pensioner of the United States, and an applicant before the pension bureau for an increase of his pension; that three letters had been filed by said Andrus in support of his claim for an increased pension; that the duty had been devolved on the petitioner, by order of the commissioner of pensions, of investigating the merits of said claim; that, in the discharge of that duty, the three letters aforesaid and other evidence in support of the claim came into the possession of the petitioner; that, upon an examination thereof, he had good reason to believe, and did believe, that one or more of said letters were false and fraudulent, in that they had been written long after the time when they purported to have been written; and that it thereupon became his duty, as special examiner in charge of said claim, to visit said Andrus, and ascertain from him, by a statement under oath, the true date when the said letters were written. The petitioner further alleged that, for more than one year prior to the date last aforesaid, he had been engaged with other special examiners in investigating many pension claims originating in Howard county, Iowa, and in that vicinity, in which one George M. Van Leuven, a resident of that county, had acted as attorney in prosecuting said claims before the pension department; that so many frauds had been unearthed in the course of such investigation, many of which had been committed at the instance of said Van Leuven, without any intentional wrongdoing on the part of the applicants, that it was deemed inexpedient and impracticable to prosecute all persons concerned therein; that general instructions had accordingly been given by the commissioner of pensions to obtain all material evidence that could be obtained respecting the conduct of said Van Leuven and other persons who had acted in an official capacity, as examining surgeons, who might have been concerned in said frauds, to the end that they might be duly prosecuted, but that no prosecutions should be recommended or set on foot by special examiners of the pension department against individual pensioners who confessed their fraud, except in extreme cases where the frauds perpetrated appeared to have been gross and willful; that, acting in line with such general instructions of the commissioner of pensions, the petitioner visited said Andrus, in Howard county, Iowa, with a view of ascertaining whether the aforesaid letters which were believed to be fraudulent were in fact written on the date which had theretofore been alleged by the pension claimant, to wit, in the year 1864, or at a much later date; that, on the occasion of said interview, the petitioner requested said Andrus to make a truthful statement concerning said letters and the dates when they were written, and said to him, in substance, "that if he, the said Andrus, should not tell the truth about said letters, and if it should conclusively appear thereafter from other sources that he had made false statements under oath concerning said letters, then he, the said petitioner, would recommend the criminal prosecution of said Andrus for perjury," the fact being that Andrus had theretofore stated under oath, in a deposition taken before a special examiner of the pension bureau in support of his claim for a pension, that said letters were written by him during the year 1864, which statement was material to the allowance of the claim, and constituted the crime of perjury, under the laws of the United States, provided it was false and was known to said Andrus to be false when the same was made. The reply further disclosed, in substance, that the acts aforesaid, as

described by the petitioner, and no other or different acts, constituted the alleged offense for which he had been indicted, tried, convicted, and sentenced in the district court of Howard county, Iowa. The respondent below, who is the appellant here, demurred to the foregoing plea, and also moved to strike out material parts thereof, but each was overruled. A hearing was then had on the issues tendered by the plea; considerable evidence was offered by the petitioner in support thereof; and, at the conclusion of the hearing, the petitioner was discharged from custody. 81 Fed. 359. The case comes to this court on appeal from such order.

Milton Remley, Atty. Gen. of Iowa, for appellant.

Edward C. Stringer, U. S. Atty., Fred W. Reed, and Daniel Fish, for appellee.

Before SANBORN and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended on behalf of the appellant, and it seems to be one of the principal errors which is relied upon for a reversal of the order of the district court, that the facts alleged in the petitioner's reply to the sheriff's return, hereafter termed the "petitioner's plea," were insufficient to warrant his discharge from custody, and that the trial court erred both in overruling the demurrer thereto and in admitting testimony to substantiate the averments of the plea. In support of this contention it is said, in effect, that the plea which was interposed was inconclusive and of no avail, because it did not admit the doing of the acts charged in the indictment, and, furthermore, show by proper averments that they were done in obedience to the laws of the United States, but that the plea merely admitted the doing of certain other acts, quite different from those described in the indictment, and then averred or showed that such other acts were done in pursuance of federal authority. We think, however, that the plea was not bad for the reasons last indicated. It is manifest from an inspection of the pleading that it was not framed with a view of confessing and avoiding the specific charge contained in the indictment, but that it was framed upon an entirely different theory, namely, for the purpose of showing that the petitioner was not guilty of the specific acts described in the indictment; that the acts by him done and performed, which had furnished the sole basis for a criminal charge under the laws of the state, were done by the petitioner in the line of his duty as a federal officer; and that by reason of that fact the federal court, to which the application for a writ of habeas corpus was addressed, was fully empowered by sections 751, 753, and 761 of the Revised Statutes of the United States to release him from imprisonment, notwithstanding his prior conviction as for a crime in the courts of the state of Iowa. The plea seems to have been well conceived for the purpose last indicated, and it admits of no controversy, we think, that the acts which were confessed by the plea, considering all the circumstances under which the petitioner was called upon to act, were within the line of his duty as a special examiner of the pension bureau, the same having been done in accordance with regulations lawfully made and instructions given by the commissioner of

pensions, and therefore having been done and performed in pursuance of the laws of the United States.

It is insisted, however, in behalf of the appellant, that the action taken by the trial court sets at naught the solemn adjudication of the courts of Iowa in a case properly within their jurisdiction, and that, because of this fact, the order discharging the petitioner was erroneous and beyond the power of the trial court. The answer to this contention is found in the fact that by section 7 of the act of March 2, 1833 (4 Stat. 632, c. 57), the substance of which is now embodied in section 753 of the Revised Statutes, the congress of the United States has expressly authorized the federal courts to issue writs of habeas corpus for the release of persons who are confined or imprisoned "for any act done, or omitted to be done, in pursuance of a law of the United States, or any order, process, or decree of any court or judge thereof." By means of numerous federal adjudications upon this act, which have been cited and approved by the supreme court of the United States, it is now well established: First, that the federal courts may release a person after his conviction by a state court as well as before a trial, when he is restrained of his liberty for an act done in pursuance of a law of the United States lawfully enacted; second, that the statute in question was designed to give relief to one in custody under a state law, not only when a state statute expressly imposes a penalty for executing a law of the United States or the process of its courts, but also when a state law is general in its terms, and applicable to all persons, and one is in custody under color thereof for an act which was in fact done in pursuance of federal authority; and, third, that, when an indictment charging an offense against a state law does not show on its face that the act which forms the basis of the charge was done in pursuance of a law of the United States, that fact may be established by proof aliunde,—in other words, that when, in a proceeding by habeas corpus, a person claims immunity from arrest and imprisonment on the ground that he is in fact held for an act done in pursuance of federal authority, the federal courts may go behind the indictment or information, as the case may be, and ascertain by an independent inquiry whether the act which furnishes the sole basis for the charge was in truth done in pursuance of a law of the United States, or the order, process, or decree of a federal tribunal. If the federal courts did not possess the power last mentioned, the habeas corpus act would in some cases prove ineffective to protect federal officers in the performance of their duties. In re Hurst, 2 Flip. 510, 12 Fed. Cas. 1024; Brown v. U. S., 2 Woods, 428, 4 Fed. Cas. 98; U. S. v. Jailer, 26 Fed. Cas. 571, 575, 2 Abb. (U. S.) 265; Ex parte Thompson, 1 Flip. 507, 23 Fed. Cas. 1015, 1016; Ex parte Jenkins, 2 Wall. Jr. 521, 13 Fed. Cas. 445; In re Bull, 4 Dill. 323, 328, Fed. Cas. No. 2,119; In re Neill, 8 Blatchf. 156, 17 Fed. Cas. 1296. It was also decided in Re Neagle, 135 U. S. 1, 75, 10 Sup. Ct. 658, where most of the foregoing cases were cited and approved, that no act done in pursuance of a law of the United States lawfully enacted can be an offense against the laws of a state, and that an act done in obedience to rules or regulations lawfully prescribed by one of the executive departments of the gov-

ernment or in obedience to the directions of one of the heads of such departments, acting within the scope of his authority, is to be regarded as an act done in pursuance of a law of the United States, although no statute of the United States has in express terms directed the doing of the act. It may be conceded that the act of congress of March 2, 1833, which empowers the federal courts to go behind an indictment found in a state court, and determine by an independent investigation of the facts whether the act which forms the basis of the criminal charge was done in pursuance of federal authority, confers a delicate and anomalous power on the federal courts, which should in all cases be cautiously exercised; but, in view of the numerous adjudications cited above, we cannot doubt the existence of such a power, nor the fact that it was intentionally conferred by the lawmaker. The act in question owes its birth to an attempt by one of the states of this Union to nullify the action of the congress of the United States over subjects that had been committed to its charge by the federal constitution, and the power thereby conferred on federal courts and federal judges was granted for no other purpose than to prevent interference with the rightful authority of the general government. Owing to the dual nature of our government, it was deemed necessary legislation to accomplish that object.

It follows from what has been said that no error was committed by the trial court in receiving the proof which was offered by the petitioner to show that, in point of fact, he was in custody for acts done in the legitimate discharge of his duties as a federal official, nor in ordering his discharge when fully satisfied that such was the case. For acts of that nature the state court was without power to imprison or fine the petitioner, and its judgment inflicting such punishment was void in the same sense that the judgment of a court is void when it sentences a person to a kind of punishment not authorized by law. Ex parte Lange, 18 Wall. 163; Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781.

It is further suggested in the brief of the attorney general, and some stress was laid on that point in argument, that, in any event, the petitioner should not have been discharged on habeas corpus, but should have been remanded to the custody of the sheriff, and required to prosecute a writ of error to the supreme court of the United States. This contention, we think, is without merit. While it is true that the relief prayed for by the petitioner could have been obtained in the usual way by a writ of error, yet, in our judgment, the case at bar does not belong to the class of cases in which a person in custody under the warrant of a state court should be compelled to seek relief by appeal or writ of error rather than by a writ of habeas corpus. In the case of Ex parte Royall, 117 U. S. 241, 251, 6 Sup. Ct. 734, it was said, in substance, that when a federal officer is in custody for an act done in pursuance of a law of the United States, or an order, process, or decree of a federal court, and that when a citizen of a foreign state is in custody, under the warrant of a state court, for an act done under an authority claimed to have been conferred by the sovereignty of which he is a citizen, so that our relations with foreign governments are involved in the controversy, such

cases present questions of such importance and urgency that the court which is appealed to for relief may and should discharge the petitioner in a proceeding by habeas corpus, instead of compelling him to resort to the slower remedy by appeal, provided that it finds upon an investigation of the case that the petitioner's complaint is well founded. The arrest of federal officers or other persons for acts lawfully done in discharge of their duties under federal laws impairs to a certain extent the authority and efficiency of the general government; and for that reason no court, so far as we are aware, has ever hesitated in that class of cases to discharge a petitioner from custody by writ of habeas corpus, when it appeared on a hearing of the case that the petitioner was entitled to be released from imprisonment.

No other questions besides those already noticed and decided are presented by the assignment of errors which require consideration at our hands. In the brief of counsel for the appellant it is said, in substance, that the errors complained of consisted in overruling the demurrer to the petitioner's plea; that, on the conceded facts of the case, which we take to mean the facts alleged in the petitioner's plea, inasmuch as there is no special finding of fact contained in the record, the trial court had no jurisdiction to issue a writ of habeas corpus or to discharge the prisoner; and that the court also erred in holding that the petitioner was illegally deprived of his liberty when it appeared that he was in custody under the judgment and sentence of the district court of Howard county, Iowa, upon an indictment alleging an offense under the laws of the state. These, in our opinion, are the only questions presented by the record which are open for review by this court; and, as they have each been considered and the position taken by the appellant adjudged to be untenable, the order discharging the petitioner from custody is hereby affirmed.