## In re TURNER.

### SHERIFF v. TURNER et al.

(Circuit Court, S. D. Iowa, C. D. December 1, 1902.)

(District Court, S. D. Iowa, C. D. December 1, 1902.)

### No. 2,404.

1. STATES—POWER TO ARREST UNITED STATES OFFICER.

An officer of the United States army acting in the discharge of his duty, in obedience to orders of the secretary of war, who in turn is executing an act of congress, is not subject to arrest on a warrant or order of a state court.

2. FEDERAL COURTS—HABEAS CORPUS—DISCHARGE OF STATE PRISONER.

Where an officer of the United States army, while in the discharge of his duty, in obedience to orders of his superiors, has been arrested and is being held by the authorities of a state on an order of a state court, which was without jurisdiction, the case is one of such urgency that a federal court, in the exercise of its discretionary power, will order his discharge on a writ of habeas corpus.

3. REMOVAL OF CAUSES—AMOUNT IN CONTROVERSY.

In a suit to enjoin a permanent injury to land, the value of the land determines the amount in controversy for the purposes of the jurisdiction of a federal court, and if such value exceeds $2,000, and other jurisdictional facts appear, the cause is removable.

4. STATES—POWER TO ENJOIN FEDERAL OFFICER.

A state court is without jurisdiction to enjoin an officer of the United States army from doing a work which he is commanded to perform by his superior officer in the execution of an act of congress, and, such an injunction being void, its disobedience by the officer is not a contempt, and his arrest and detention therefor is without legal authority.

Two actions heard together. The first was a suit in equity removed from a state court, and heard on a motion to remand and a motion by defendant to dissolve an injunction. The second was a proceeding by habeas corpus in the district court by the defendant in the first suit for his discharge from arrest and detention on an order of the state court for violation of injunction.

J. H. Henderson and Howard Clark, for complainant.

Lewis Miles, U. S. Atty., and G. B. Stewart, Asst. U. S. Atty., for respondents.

Lewis Miles, U. S. Atty., and G. B. Stewart, Asst. U. S. Atty., for the writ.

J. H. Henderson and Howard Clark, opposed.

¶ 2. Jurisdiction of federal courts in habeas corpus proceedings, see note to In re Huse, 25 C. C. A. 4.

¶ 3. Jurisdiction of circuit courts as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Shoe Co. v. Roper, 36 C. C. A. 459.

McPHERSON, District Judge. Both of the above-entitled causes were heard by me at the same time, and, the cases being so closely related, can be stated by me and decided in the one opinion.

The first case is a bill in equity filed in the district court of Warren county, Iowa, to restrain the defendants from laying a sewer pipe from the United States army post to what is called North river. The complainant is the owner of a tract of land a short distance below where the sewer will enter the river. North river is alleged to be a small, sluggish stream, not navigable, not meandered, sometimes no running water, at all other times with but little or no current, but at all times holding sufficient water for his cattle to drink. In April, 1900, congress passed a statute for the erection of a military post at Des Moines. Under this statute the site selected is about five miles south of Des Moines, and the sewer in question extends from the site to North river, a distance of about two miles. It is alleged that defendant Turner is in charge of the works, and that he and the defendant Herrick are constructing the works, including the sewer. It is also alleged that the discharge of the sewage will so pollute the waters and the bed of North river as to make plaintiff's lands unfit for pasture, because of the necessity for complainant's cattle to go to North river for drinking water, there being no other water for cattle on his land. The act of congress provides, first, that the site of the post shall be approved by the secretary of war. It next provides that the army post shall be of such character and capacity as the secretary of war shall direct and approve.

The defendant Turner has surveyed the same, and with the aid of defendant Herrick is constructing the sewer. It is alleged that, by making the sewer, thereby the channel of the stream will be polluted, and his land made unfit for pasture, and by reason thereof his lands will be depreciated in value; and it is contended that this is taking of private property for public use without making compensation therefor.

The state court issued an injunction, enjoining the defendants from constructing any part of the sewer in Warren county, and from having the mouth thereof at North river. The defendants, and particularly defendant Turner, disregarded the writ and refused to obey it. Thereupon he was arrested by the sheriff to answer as for contempt. Before the contempt proceedings were heard the United States attorney appeared and filed a petition to remove the case to this court on the ground of a "federal question" being involved. The removal was granted, and the record filed in this court. The complainant has filed a motion to remand, and the United States attorney moves to vacate the injunction. Shortly before the contempt proceedings were to be heard I ordered the writ of habeas corpus to issue, directing the sheriff to show by what authority he detained the said Turner. The sheriff pleads that he held him by virtue of the proceedings and orders in the contempt case.

In addition to the foregoing, it also appears that the defendant Turner is an officer in the United States army with the rank of major, and that as Major Turner, under the directions and orders of the war department, he was, in the line of military duty, erecting said post, and as part thereof was constructing said sewer.

Some minor and some technical questions have been waived, and the substantial inquiries which, by both the circuit and district courts of the United States, must now be decided are, has a state court the jurisdiction in a proceeding brought for the sole purpose of enjoining an officer of the United States army from doing a work which he is commanded to perform by his superior officer in the execution of an act of congress? And can such officer be enjoined by a state court, even though he is committing a wrong upon complainant's property, provided such act is for and on behalf of the government?

If the court had jurisdiction, then the power to issue the writ existed, and whether it was issued upon a sufficient or insufficient showing by the landowner is not a question for this court. But the question, and the only question, for this court is, did the state court have jurisdiction to proceed further, when it became known that Mr. Turner was Major Turner, and that Major Turner was doing the things complained of as an army officer, in obedience to a command by the secretary of war, pursuant to an act of congress? If there is doubt about the matter, neither of these courts should hold that the state court was without power or jurisdiction. But having no doubt whatever that the state court was wholly without jurisdiction, it is my duty to so order.

And, the state court being without jurisdiction, its writ of injunction was void, and the disobedience thereof was not a contempt, and his arrest and detention was without authority. And I deem it my duty to present, although briefly, my reasons for so holding.

And, first, as to the habeas corpus case in the district court. This writ cannot be used as a writ of error or appeal to review the action of another court. But it can and should be issued and made effective when another court has acted without jurisdiction to act. Even then, at times and in cases like this, it is discretionary. It would be proper to allow the case to take its course through the Iowa courts, the supreme court of the state included, and then, if the party arrested is adjudged against, to present the case by writ of error to the supreme court of the United States. But the arrest, under authority of a state, of a federal officer, and that officer one of the federal army in the performance of a command by a superior officer which he dare not disobey, presents a matter of urgency, and it is within the discretion of the federal courts to at once take cognizance of the case, and act at once, rather than allow the case to be carried through three courts, taking two or three years of time. Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868; Campbell v. Waite, 31 C. C. A. 403, 88 Fed. 102, by the court of appeals for this circuit. Therefore it follows that the habeas corpus proceedings are the proper remedy in a case like the one at bar. The question here involved has many times been decided in all its material phases, and, in my judgment, is not open to serious question. In re Waite (D. C.) 81 Fed. 359, decided by Judge Shiras, in the Northern district of Iowa, in 1897. Waite held a commission under the commissioner of pensions. It was his duty to take evidence and examine into claims of fraud pertaining to pensions. While in the performance of that duty, and thus taking evidence of a witness, the witness afterwards charged that Waite, the pension examiner, maliciously threatened him to compel him to do an

act against his will, which under the Iowa statute is an indictable offense, and Waite was indicted in the state court for the alleged offense. On his trial he urged that in doing the things complained of he was in the performance of an official duty as a United States officer. But he was convicted, and appealed to the Iowa supreme court; and that court decided that his contention was without merit, and affirmed the judgment. State v. Waite, 70 N. W. 596. Thereupon Waite applied for and obtained a writ of habeas corpus from Judge Shiras, and upon hearing was discharged, in the face of the judgment of the district court of Howard county, Iowa, and of the supreme court of the state; and, after a careful reading and study of the opinion of Judge Shiras, I find that there is little remaining to be said, because I fully indorse it as being full and complete, and one that cannot be successfully answered. All the then existing authorities are presented, and I need only cite that opinion as being expressive of my views. For if I were to attempt to elaborate upon the question I would only engage in repetition which cannot possibly serve a useful purpose.

But that is not all. The judgment of Judge Shiras was affirmed without dissent by the United States circuit court of appeals for this circuit, which affirmance is reported in 31 C. C. A. 403, 88 Fed. 102. But that is not all. The opinion of Judge Shiras is cited with approval by the supreme court of the United States in the case of Ohio v. Thomas, 173 U. S. 276–284, 19 Sup. Ct. 453, 43 L. Ed. 699. So that the holding of Judge Shiras, by the affirmance thereof by the court of appeals, is the law of this circuit, and the supreme court has said that it is the law of the nation. Not only has that court said so once, but many times, as will be seen by referring to the cases above cited.

And why should this not be so? It is begging the whole question, and it is idle, to say that any and all federal officers are amenable and subject to the laws, civil and criminal, of Iowa when within the state. Of course they are. The secretary of war, the general of the armies, the chief justice, and even the president, perhaps, are subject to all the laws of Iowa, when in Iowa. No one disputes this. But that is not the question. Can any one of those officers, or any subordinate, in the discharge of his duties as a government officer, be subject to the laws of the state while in the state? That is the question and the only question. The state is not greater than the nation; but, on the contrary, the state is but a part, and a small part, of the nation. And, if I am wrong, then instead of the president, and the secretary of war, and the general of the army being in control, we will have army commands given by and through the courts, and an officer like Major Turner cashiered and dismissed from the service if he refuses to obey the commands from his superiors, and if he does obey them thrown into a county jail for contempt of court.

A much stronger showing for the exercise of jurisdiction by a state court was presented in the case of In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55. In that case Neagle was acting under directions of the attorney general, in acting as an escort to a United States judge in going from one court to another, and in protecting the judge from the infuriated and defeated attorney of his court in litigation recently before the judge; and, in protecting the judge, Neagle, the attendant,

killed the assailant.  The California courts undertook to hold and try him for murder.  But he was taken from the control and custody of the California courts by a United States court, and on habeas corpus proceedings discharged.  And in Ohio v. Thomas, 173 U. S. 276, 19 Sup. Ct. 453, 43 L. Ed. 699, a like holding was made.

So that, both by reason and the highest authority of the land, I hold that an officer of the United States army, in the discharge of his duty, acting in obedience to commands by the secretary of war, who in turn is executing an act of congress, is not subject to arrest on a warrant or order of a state court, and that such arrest is wholly illegal; and it follows that Major Turner is discharged from custody and detention.

Next, as to the injunction case in the circuit court.  It is claimed that the amount in controversy does not exceed $2,000.  But it is the value of the land, and not of the use, that is decisive of this question.  That there is a federal question involved cannot be in doubt.  It appears from the face of the petition, filed in the state court, that defendants were executing an act of congress, and complainant says, in effect and meaning, that the statute is being executed in an unauthorized and unlawful manner, because of that provision of the constitution which declares, "nor shall private property be taken for public use without just compensation."  Const. Amend. art. 5.  So that in this case we have not only a federal statute involved, under which defendants are acting, but we have a provision of the federal constitution which defendants are charged by plaintiff, the landowner, with violating; and this all because, not that defendants are taking plaintiff's property for the government, but that by laying the sewer they are depreciating the value of his property.  And whether this is a taking within the meaning of the constitution I make no ruling.  That question is not yet reached.  But complainant asserts the proposition, and defendants deny it.  Surely we have a federal question.  But that cannot be tried on injunction issued by a state court.

The injunction was improvidently issued, and should be set aside, and the order is accordingly made; and, regardless of the citizenship of the parties, a federal question being involved, and the amount in controversy being sufficient, the case was properly removed to this court by order of the state court, and the motion to remand is overruled.

The United States attorney asks that the case be dismissed because the state court was without jurisdiction.  But that question was not argued and is not considered by me.  The case will stand for such further action as counsel may be advised to take.

If complainant will suffer a legal wrong, he will have a legal remedy.  Perhaps when the sewer is constructed the complainant will then see that his wrongs have been imaginary.  But, if his wrongs shall prove to be real, our government will see to it, either that he has a remedy in the proper court, or that his wrongs are righted by being given the amplest redress.  At all events, he cannot control the army by writ of injunction, as great and powerful and beneficent as that writ is.