### SHERIFF v. TURNER et al.

(Circuit Court, S. D. Iowa, C. D.    December 19, 1902.)

#### No. 2,404.

1. INJUNCTION—RESTRAINING ACTION BY GOVERNMENT OFFICER.

   A federal court of equity will not enjoin an army officer acting under the orders of the secretary of war, and pursuant to an act of congress providing for the building of an army post, from constructing a sewer therefrom upon lands over which the government has acquired the right of way, at suit of an owner of land lying below the projected mouth of the sewer, and through which the stream flows into which it will discharge, who alleges that the pollution of the water will interfere with the use and depreciate the value of his land. Whether the action complained of amounts to a taking of complainant's land for public use, or is a tort only, injunction is not the proper remedy.

In Equity. On application for an injunction and motion to dismiss for want of jurisdiction.

J. H. Henderson and Howard J. Clark, for complainant.
Lewis Miles, U. S. Atty.

McPHERSON, District Judge. This action is by a bill in equity praying an injunction against the defendants. The case was brought to this court on removal proceedings from the district court of Warren county. Complainant moved to remand the case, which motion

was overruled. A temporary injunction had been issued by the state court, which, on motion of defendants, was dissolved by this court. 119 Fed. 231. The complainant now asks from this court a writ of injunction against the defendants, and the defendants move to dismiss the case for want of jurisdiction.

Under an act of congress of April, 1900, the government has secured several hundred acres of land, three or four miles to the south of the city of Des Moines. North river is three or four miles to the south of said land. This stream is not meandered and is not navigable. It is a sluggish stream, with water therein all of the year, but with running water but part of the time. The government is now constructing an army post on its land, and, as an appurtenance thereto, is constructing a sewer from the post to North river. The present purpose seems to be to have the sewer terminate at North river, a short distance above complainant's dairy farm. He alleges, and no doubt correctly, that the washings from the sewer will pollute the stream, and that his cattle cannot go there for drink, and that there is no other water on his farm; and with good reason he expects that his farm will be depreciated in value from the offensive odors from the mouth of the sewer and from the pollution of the water. The defendant Turner is an officer in the United States army, with the rank of major, and as such officer, under the directions of the secretary of war, is constructing the sewer. The defendant Herrick is a contractor, and is doing said work, with the aid and under the direction of Major Turner. The defendant Turner having violated, as was said, the writ of injunction issued by the state court, and, being arrested therefor, I ordered his discharge on habeas corpus proceedings; and, an application having been made for an injunction restraining the defendant from building the sewer with the mouth thereof at a point up stream from plaintiff's land, the questions are: Has this court jurisdiction in the case? and, if so, should the writ issue?

A federal question is involved, and the case was properly removed to this court. By continuing the sewer for comparatively a short distance it would terminate at the Des Moines river, or so near thereto as to be harmless to all; and that that is what should be done, and must be done, I have no doubt. It has been the recognized rule in Iowa for a third of a century that the higher owner shall not collect surface waters and turn them on the land below. Livingston v. McDonald, 21 Iowa, 160, 89 Am. Dec. 563. That case has been uniformly followed to the present time. And the greater is the reason for not allowing the collection of filth and dumping that on the land of another, thereby creating a nuisance, which probably could be abated, both by indictment and in equity, under the Iowa practice acts. That the government will not do this, when the matter is brought to the attention of the proper officer, I have no doubt. But, if it does, then either the complainant must suffer a great wrong or be accorded some remedy.

But these statements are not decisive of the questions now before me. Under the authority of the case of U. S. v. Lee, 106 U. S. 196, 27 L. Ed. 171; and cases therein cited, as well as by many subse-

quent cases, an owner can maintain an action for, and recover possession of, property that belongs to him, as against an officer, military or civil, of the government, who claims possession thereof for and on behalf of the government; and such claim is no defense, for the stated, and as it seems to me the obvious, reason that the government in such a case cannot be made a defendant, because the government in no case can be sued without its consent, and such consent can only be given by congress. In a limited class of cases, such consent has been given by statute. And it is equally so that an officer, military or civil, who unlawfully takes or trespasses upon property is personally liable for damages. Mitchell v. Harmony, 13 How. 115, 14 L. Ed. 75, and the annotations to that case as found in Rose's notes.

But neither of the above holdings is authority for issuing the writ of injunction against the construction of public works under an act of congress, by direction of the secretary of war, and theoretically by direction of the president. The fact will be kept in mind in this case that Major Turner has not taken, and he does not threaten to take, any of complainant's property. He is not in possession of, and does not threaten to take possession of, any of complainant's property. The acts complained of are these: As a military officer, under an act of congress, by direction of the secretary of war, he is building an army post. That is fully authorized, and therefore not an unlawful act. Under the same authority, and as an appurtenant to the post, he is constructing a sewer, which is desirable, and probably necessary, both for the health and safety of the soldiers to be stationed there, as well as the health and safety of people residing near by, as well as for the people of the city of Des Moines. That he is properly, and according to modern methods, constructing the sewer, is not questioned. That the sewer is wholly upon grounds acquired for that purpose is conceded. But, owing to the location of the mouth of the sewer, the washings from the sewer will be carried on and over complainant's lands, and the offensive odors will be carried on and across his premises; and, by reason of both, complainant believes that he will suffer damages; and, as above stated, he has reason to so believe, provided the mouth of the sewer is to be and remain at North river.

Under the patent laws, it has been held several times that the government, without license or consent, has no right to use the patented article; and an officer of the government, using the article for and on behalf of the government, cannot justify such use. James v. Campbell, 104 U. S. 356, 26 L. Ed. 786; U. S. v. Palmer, 128 U. S. 262, 271, 9 Sup. Ct. 104, 32 L. Ed. 442; Solomons v. U. S., 137 U. S. 225–343, 11 Sup. Ct. 88, 34 L. Ed. 667; U. S. v. Burne, 12 Wall. 247, 20 L. Ed. 388. The Palmer, Solomons, and Burne Cases were brought directly in the court of claims against the United States, under statutes allowing the government to be sued on contract, express or implied. And as the using of patented articles is a taking of property, and when so taken by the government is taken with an implied promise to pay therefor, such cases were properly brought in the court of claims. And in the case at bar the threatened inva-

sion of complainant's rights is contended by complainant as being a taking of his property for public use. If so, he has his remedy at law by suit against the government on the implied promise to pay him.

The case of James v. Campbell, above cited, was an equity case brought in the circuit court by Campbell, the patentee, against James, the postmaster of New York City, for using a letter stamping device. The circuit court gave a decree for complainant, which was reversed by the supreme court, because of the lack of merit in the case. But the court, by Justice Bradley, said:

"The course adopted in the present case, of instituting an action against a public officer, who acts for and in behalf of the government, is open to serious objections. We doubt very much whether such an action can be sustained. It is substantially a suit against the United States itself, which cannot be maintained under the guise of a suit against its officers and agents, except in the manner provided by law. We have heretofore expressed our views on this subject in Carr v. U. S., 98 U. S. 433, 25 L. Ed. 209, where a judgment in ejectment against a government agent was held to be no estoppel against the government itself."

That case was not decided on the point above quoted, and the case was decided after the decision in U. S. v. Lee, supra. But the decision in U. S. v. Lee rested upon a number of long-time prior decisions, and the reasons given and stated by so eminent a judge as was Justice Bradley have much weight with me. And the reasons are the stronger from the fact that in another part of the opinion the court said it was an open question whether the damages could be recovered in an action in the court of claims, or whether the party must rely upon the fairness of congress. So far as I am advised, this question has not again been before the supreme court in a patent or like case.

And again, if in the case at bar it is a taking of private property tor public use, then the answer is that the federal constitution does not require payment in advance, as do many of the state constitutions, and particularly where the government itself is taking the property for its own use. But to my mind it is more than doubtful if the government is taking complainant's property. Physically, beyond dispute, it is not taking his property. All that can be said is that, if the mouth of the sewer is placed as suspected it will be, complainant's property will be depreciated in value. It often happens that private interests must yield for the public good, as was held in Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, where the state rendered Mugler's property worthless in the exercise of the police power.

Probably the sewer in question, constructed in any manner, terminating at any point, will be harmful in some degree to some one or more persons. At least a moral obligation rests upon the officers to so construct it as to do as little harm as possible, and to be the most serviceable to the post; and in so determining and in so constructing a high degree of engineering skill and judgment and good sense are called for. But in no case will an officer be enjoined from doing an act other than mere ministerial acts. But, if the act calls for judgment and discretion, the injunction will not issue. Kir-

119 F.—50

wan v. Murphy, 83 Fed. 275–280, 28 C. C. A. 348; Noble v. Railroad Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123.

It therefore seems to me that complainant has an adequate remedy at law. Particularly is this so, if it is a taking of property as his counsel contend, although I do not hold that he can avail himself of the statute for condemning private property for public use. But if the acts amount only to a tort, for which the government cannot be sued, and his only remedy is to ask for compensation from congress, for the reasons above given, an injunction should not issue. But whether this court has jurisdiction in any other phase of the case is a question that has not been elaborately argued.

For the present the case will be retained. In the meantime any ruling can be reviewed; and probably in the meantime the war department will adjust all matters to the satisfaction of all. So that the application for an injunction will be denied, and the motion to dismiss the case will be overruled, with the right of each party to again make their respective applications without the orders now made being a bar.