UNITED STATES v. LIPSETT, Sheriff of Chippewa County.

Ex parte GILLETTE.

(District Court, W. D. Michigan.    September 26, 1907.)

1. HABEAS CORPUS—POWER OF FEDERAL COURTS—SOLDIER CHARGED WITH
CRIME UNDER STATE LAWS.

Under Rev. St. §§ 752, 753, 761 [U. S. Comp. St. 1901, pp. 592, 594], a court or judge of the United States has power to issue a writ of habeas corpus on petition of the United States for the purpose of an inquiry into the cause of detention of a prisoner held by a state to answer to a criminal charge, where it is alleged by the petitioner that the act charged as a crime was committed by the prisoner in the performance of his duty as a soldier of the United States; and it has authority to determine summarily as a fact whether or not such allegation is true, and, if found to be true, to discharge the prisoner on the ground that the state is without jurisdiction to try him for such act.

[Ed. Note.—Jurisdiction of federal courts in habeas corpus proceedings, see note to In re Huse, 25 C. C. A. 4.]

2. HOMICIDE — EXERCISE OF AUTHORITY — ESCAPING PRISONER — ACCIDENTAL
KILLING OF THIRD PERSON.

A soldier in the service of the United States was placed on guard over prisoners and furnished with a gun and ammunition.  By the manual of guard duty, with which he was familiar, it was made his duty if a prisoner attempted to escape to command him to halt, and if he failed to do so, and there was no other possible means to prevent his escape, to fire upon him.  One of the prisoners started to run away down a public street, and the guard pursued, calling on him to halt, to which no attention was paid.  The guard, being lame, was unable to overtake the prisoner, and after reaching a place where the street was apparently clear fired upon him, but the bullet went over his head and struck and killed a young woman who was walking with others in the street upon higher ground and was not seen by the guard.  He fired again at the prisoner, but the latter escaped temporarily.  There was no claim that the killing was intentional, or that the guard acted maliciously or wantonly, or otherwise than in good faith.  Held, that under such facts the guard in shooting was acting in the supposed performance of his duty as a soldier, and was not subject to arrest and trial for manslaughter by the state.

Habeas Corpus.

H. C. Carbaugh, Judge Advocate U. S. Army, Jno. A. Hull, Judge Advocate U. S. Army, and George G. Covell, U. S. Dist. Atty., for the United States.

George B. Holden, Pros. Atty., for respondent.

KNAPPEN, District Judge (orally).  The substantial facts are these:  On or about July 22, 1907, Cyrus Gillette, a private soldier in the military service of the United States, and stationed at Ft. Brady, adjacent to Sault Ste. Marie, Mich., was acting under orders of his immediate superior officer as a military sentry over two military prisoners (at least one of whom, Hodsdon, was charged with desertion), who were engaged in work near the entrance to Ft. Brady Military Reservation.  While so employed, the prisoner Hodsdon attempted to escape, in such attempt running easterly in a public street.  Gillette immediately called upon the prisoner to halt, and repeated his call two or three times.  Hodsdon ignored the demand to halt, and continued his

156 F.—5

flight at full speed; Gillette following him as rapidly as he could (having a lame knee, and having been recently discharged from the hospital), loading his gun as he went with the guard cartridge, in preference to the service cartridge, the former having a smaller charge of explosive and a different shaped bullet from the latter, so as not to carry the bullet to such a great distance as the service cartridge does. Gillette held his fire some distance, while running, because of some children whom he saw in the street down which he was pursuing the escaping prisoner. When from 30 to 100 feet from the reservation limits Gillette fired at Hodsdon, who was from 125 to 200 feet in advance of him, still running and trying to escape. The bullet passed over Hodsdon's head and accidentally struck and killed Miss Elizabeth Cadenhead, who, with friends, was returning from a visit to Ft. Brady, and was walking along the street on which Gillette and Hodsdon were running and in the same direction, being at the time of the shooting from 375 to 475 feet ahead of Gillette, and thus from 250 to 275 feet ahead of Hodsdon. There is no claim that Gillette saw Miss Cadenhead, or any other member of her party, either before or at the time of shooting; nor that he knew of their presence in the street. The point where Miss Cadenhead stood when the shot was fired was about five feet higher than the spot where Gillette stood; the latter spot being about two feet higher than the place occupied by Hodsdon.

After the firing, Hodsdon continued his flight, turning from the street on which he was running south about 100 feet, and then southeasterly about 130 feet, and hid in a clump of bushes and trees on a private residence lot, where he was found two hours later. After he had turned south Gillette again fired at him, but without effect. Gillette was familiar with the manual of guard duty issued by the Secretary of War, which contained the provision:

"If a prisoner attempts to escape, the sentinel will call 'halt.' If he fails to halt when the sentinel has once repeated his call, and if there be no other possible means to prevent his escape, the sentinel will fire upon him."

Which manual also contained a syllabus of the decision of the United States Circuit Court for the Eastern District of Michigan in the case of United States v. Clark, 31 Fed. 710, which contained, among other things, this statement:

"It seems that the sergeant of the guard has a right to shoot a military convict if there be no other possible means of preventing his escape."

Said manual also containing the circular of Colonel Morrill, addressed to the Assistant Adjutant General of the Department of Columbia, containing this statement:

"A sentinel is placed as guard over prisoners to prevent their escape, and for this purpose he is furnished a musket with ammunition. To prevent escape is his first and most important duty. * * * I suppose the law to be this: That a sentinel shall not use more force or violence to prevent the escape of a prisoner than is necessary to effect that object; but, if the prisoner, after being ordered to halt, continues his flight, the sentinel may maim or even kill him, and it is his duty to do so."

Immediately after the shooting, Gillette was tried before a general court-martial, at Ft. Brady, Mich., on the charge of manslaughter, in violation of the sixty-second article of war; the specification being

that he did "unlawfully, willfully and feloniously kill Miss Elizabeth Cadenhead, with a United States magazine rifle, loaded with powder and ball." He pleaded not guilty, and was acquitted; the findings and acquittal being approved by the proper officers in these words:

"In the foregoing case of Private Cyrus Gillette, Company M, Seventh Infantry, the evidence of record clearly shows that the accused, in compliance with his orders, pursued and shot at an escaping prisoner. There is nothing that shows that the accused had any cause to believe that the unfortunate accident that took place was liable to occur from his obeying the provisions of the guard manual, and as the shot was fired without either malice or recklessness on his part, in the evident belief that he was only discharging his duty to the United States government, the findings and acquittal are approved."

Gillette was accordingly restored to duty. He was afterwards arrested on a warrant issued by a state magistrate of Chippewa county, Mich., charging him with manslaughter in killing Miss Cadenhead. He waived examination and was held to trial before the circuit court of Chippewa county, being, pending trial, committed to jail in default of bail. The application for writ of habeas corpus was made by the United States through its district attorney, under the authority of the Attorney General of the United States, upon the ground that the state court has no jurisdiction to try Gillette for the offense charged, because the act alleged to constitute the offense was done by Gillette in the performance of his duty under the laws and authority of the United States; it being also contended on behalf of the government that the acquittal of Gillette by the court-martial is a bar to further prosecution in the state courts. The prisoner was produced in court in obedience to the writ, and hearing was had upon a stipulation of facts; no conflict of testimony being thus presented. No claim is made on the part of the state authorities that Gillette had any malice or ill will towards either Hodsdon or Miss Cadenhead, or that the homicide was other than accidental; and there is nothing in the evidence presented on the hearing reasonably tending to show, nor is it asserted, that Gillette, in firing the shot, did not act in good faith and in the supposed performance of his duty.

The defense to the writ, urged on behalf of the state authorities, is that upon the record there exists a question of fact whether there was any other possible means of preventing the escape of the fugitive than by firing, and whether Gillette exercised due care, under the circumstances disclosed by the record, in firing; the street being unobstructed, and it thus having been possible to discover that Miss Cadenhead and her companions were in the line of fire, and it being contended that, if it should be found that Gillette acted without the exercise of due care, his act became unlawful, and the homicide would be manslaughter, and that the state has the right to have the questions of fact referred to and tried by a jury in the state court.

As to the effect of the former jeopardy: Whatever may have been the status of the authorities before the decision in the case of Grafton v. United States, 206 U. S. 333, 27 Sup. Ct. 749, 51 L. Ed. 1084, that decision leaves open the question of the effect of a trial and acquittal by a United States court-martial upon the right of trial in a state court

for the same act charged as constituting an offense of the same kind and name. There have been two decisions in the District Courts to the effect that such acquittal by court-martial is not a bar, viz., In re Clark (C. C.) 31 Fed. 710, and In re Fair (C. C.) 100 Fed. 149, both of which cases were decided previous to the recent decision of the Supreme Court in Grafton v. United States. I do not find it necessary to pass upon the question of former jeopardy, because, in my judgment, this case can be disposed of upon other grounds.

The jurisdiction of the district judge to act in this matter is undoubted. Sections 752 and 753 of the Revised Statutes [U. S. Comp. St. 1901, p. 592] expressly give the judges of the Circuit and District Courts power to grant writs of habeas corpus for the purpose of inquiring into the cause of restraint of liberty when a prisoner is in custody for an act done in pursuance of a law of the United States. This statute has been enforced in a variety of cases, and there is no question of the power of a federal judge under it to inquire whether an act of the nature of that here involved was done in the performance of a duty arising under a law of the United States; nor is there any question that such act, if done in the performance of duty as a soldier in the military service of the United States, was done in pursuance of a law of the United States, and so not within the jurisdiction of a state court to try.

In Re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55, the petitioner, a deputy marshal assigned to protect Justice Field against apprehended violence, killed a man claimed to be attempting a deadly assault upon the justice. He was arrested by the California state authorities, and sued out a writ of habeas corpus upon the proposition that in killing Justice Field's assailant he was in the discharge of his duty as an officer of the United States, and therefore not guilty of murder; that he was thus held in custody by the state authorities for an act done in pursuance of a law of the United States, and was entitled to his discharge, which was granted. The decision contains a citation of cases amply sustaining the authority of the court.

In Re Waite (D. C.) 81 Fed. 359, s. c. 88 Fed. 102, 31 C. C. A. 403, a United States pension examiner had been arrested under a statute of Iowa, charged with maliciously threatening to accuse a person of a crime in order to compel him to do an act against his will. The act which was alleged to constitute an offense was claimed by the prisoner to have been done while in the discharge of his duty as such examiner, in pursuance of a law of the United States, and relief was granted upon the ground that the state court had no jurisdiction to try the respondent.

In Re Lewis (D. C.) 83 Fed. 159, special employés of the Treasury Department were arrested under the laws of Washington for alleged robbery. The act was claimed by the prisoner to have been done while in the discharge of his duty in the service of the United States. It was, of course, claimed in each of the cases referred to that no crime had been in fact committed, and that the act alleged to constitute a crime was in fact lawful.

In Re Fair (C. C.) 100 Fed. 149, a guard in the military service of the United States, at Ft. Crook, Neb., was arrested by the civil authorities of that state on a charge of murder, alleged to have been commit-

ted in the killing of a soldier while attempting to escape. It was held that he was acting under the authority of the United States, and that the state authorities had therefore no jurisdiction to try him. In each of the cases cited discharge was granted on habeas corpus.

Attention is called to the language used in Re Waite (D. C.) 81 Fed., at page 365, as fairly illustrative of the current of authorities, which seems, indeed, to be uninterrupted. It is there said:

"All these cases hold clearly, however, that when it is made to appear that an officer of the United States, or one acting under the authority of a law of the United States, is sought to be held in a state court for punishment under provisions of a statute, for an act done while in the performance of a duty he owed to the United States, the federal courts, either by removal, where the statute provides for that mode, or by writ of habeas corpus, must assume jurisdiction over the matter, and prevent further action in the state court, and the principle underlying the case is that the state has no jurisdiction over a person when he is acting under the authority of the United States."

It may be urged that the prisoner has a remedy by way of review by the Supreme Court of the United States, in case of his conviction in the state court, and so should not be given the remedy by habeas corpus. In Re Waite, supra, the Circuit Court of Appeals thus replied to this proposition (88 Fed., at page 107, 31 C. C. A. 403):

"This contention we think is without merit. While it is true that the relief prayed for by the petitioner could have been obtained in the usual way, by a writ of error, yet, in our judgment, the case at bar does not belong to the class of cases in which a person in custody under the warrant of a state court should be compelled to seek relief by appeal or writ of error rather than by a writ of habeas corpus. * * * The arrest of federal officers or other persons for acts lawfully done in discharge of their duties under federal laws impairs to a certain extent the authority and efficiency of the general government; and for that reason no court, so far as we are aware, has ever hesitated in that class of cases to discharge a petitioner from custody by writ of habeas corpus, when it appeared on a hearing of the case that the petitioner was entitled to be released from imprisonment."

So while a federal court or judge will not, in a habeas corpus proceeding, examine the evidence for the purpose of determining whether the prisoner should be found guilty or innocent, yet it is the duty of such court or judge to examine the evidence for the purpose of determining whether the act alleged to be criminal was done in the performance of duty in the service of the United States.

Attention is particularly called to the language used in the decision in the Lewis Case, 83 Fed., at page 160:

"It is true that this court could never adjudicate that question (respondents' guilt) finally, so as to convict and punish these men for robbery if they were robbers; but in a proceeding of this kind it is absolutely necessary for the court to consider the question so far as to determine whether the officers acted wantonly and with criminal intent, or whether, in so far as their acts may be regarded as wrongful, they were mere errors of judgment. Take, for instance, the Neagle Case, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55. It is not to be conceived that, if Neagle had actually committed a murder, the federal court would have shielded him from punishment. Suppose that Judge Terry had made no assault upon Judge Field, and there were no such appearances as to give reasonable ground to a person in the situation that Neagle was in to suppose that it was necessary to use a deadly weapon in defense of Judge Field, and that while acting as a protector for Judge Field, in accordance with instructions from the Attorney General of the United States, he had

wantonly shot and killed Judge Terry, or some other man, so that his act would have been actual murder. Certainly Judge Sawyer and the Supreme Court of the United States would not have justified the use of the writ of habeas corpus to shield him from punishment."

Language of similar purport is found in several of the cases to which I have called attention. This does not mean that a soldier is immune from punishment under state laws from the mere fact that he is in the service of the United States. The distinction is well expressed in Re Waite (D. C.) 81 Fed., at page 363, where the court, after holding that the state court had no jurisdiction to try a federal officer for an act done in the discharge of his duty, said:

"By this it is not meant to assert that because a person is an officer or agent of the federal government he is thereby excepted out from the jurisdiction of the state or the binding force of its laws. The mere fact that when the acts done by him were done he was an officer of the United States, charged with certain duties to that government, will not afford him immunity from prosecution under the laws of the state. Nor will the mere fact that he claims that the acts done were within the line of his official duty afford him protection, if the acts are such as to show that the claimed immunity is a mere subterfuge, and that under no fair consideration of his official duty could he have assumed that he was acting in his official capacity when the acts complained of were done by him."

The federal statute confers express power upon a federal judge in habeas corpus proceedings of this nature to pass upon questions of fact. Rev. St. § 761 [U. S. Comp. St. 1901, p. 594], provides:

"The court, or justice, or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the matter as law and justice require."

In the Neagle, Lewis, Waite, and Fair Cases inquiry was had upon the question of fact involved.

As to the suggestion that a jury trial is necessary: Attention has already been called to the fact that in each of the cases referred to an inquiry has been entered upon by the court or judge hearing the habeas corpus matter, and that the questions of fact were actually decided by the court or judge. Perhaps the most conspicuous case was that of Neagle, in which there were tried out vexed questions of fact as to whether the United States marshal was justified in killing Judge Terry, the assailant of Justice Field. In that case, where the question was raised before the United States Supreme Court on appeal from the decision of the judge who heard the case below, it was said by the Supreme Court (In re Neagle, 135 U. S., at page 75, 10 Sup. Ct. 672, 34 L. Ed. 55):

"To the objection made in the argument that the prisoner is discharged by this writ from the power of the state court to try him for the whole offense, the reply is that if the prisoner is held in the state court to answer for an act which he is authorized to do by a law of the United States, which it was his duty to do as marshal of the United States, and if in doing that act he did no more than was proper and necessary for him to do, he cannot be guilty of a crime under the laws of the state of California. * * * The Circuit Court of the United States was as competent to ascertain these facts as any other tribunal, and it was not at all necessary that a jury should be impaneled to render a verdict on them."

These cases are not in conflict with the case of Drury v. Lewis, 200 U. S., at page 1, 26 Sup. Ct. 229, 50 L. Ed. 343, from the fact that in

the case here presented there is no conflict of testimony as to whether or not the act complained of was wanton.

Coming to the question of whether the prisoner was in fact acting, in firing the shot, in the supposed performance of his duty: It is well settled that if a homicide be committed by a military guard without malice, and in the performance of his supposed duty as a soldier, such homicide is excusable, unless the order or authority relied upon was such that a man of ordinary sense and understanding would know that it was illegal. This proposition is affirmed in Re Clark, supra, and in Re Fair, supra. As pointed out in Re Clark, it is the duty of the guard pursuing a deserter to call "halt," and to repeat the call, and if there is no other reasonable means to prevent escape to shoot. A guard failing to do so would be guilty of a most serious military offense, and liable to severe punishment therefor. The manual of guard duty, with which the prisoner was familiar, contains an express ruling of the military authorities that if a prisoner, after being ordered to halt, continues his flight, it is the duty of the guard to shoot, even maiming or killing. By reference to that ruling it is not intended to hold that it was the duty of the guard to shoot in any event, without exercising his discretion as to whether it was really necessary to do so in order to prevent escape. It should go without saying that the order and rulings contained in the guard manual were properly relied upon by the guard, because such order and rulings were not in fact illegal, but, on the contrary, were legal. If, therefore, the guard, in shooting as he did, was acting in the supposed exercise of his duty, without malice or criminal intent—and as already said, there is no claim of such— he is not liable to prosecution in the state court from the fact that from misinformation or lack of good judgment he transcended his authority, even though he might be liable to a civil action at the suit of the injured party. This proposition is sustained by the decisions in the cases of Fair, Lewis, and Waite, above cited.

Does it satisfactorily appear that it seemed to respondent reasonably necessary to shoot at the prisoner so attempting to escape? It is my duty, sitting as a judge in this proceeding, to determine this fact. If a reasonable question existed, under a conflict of testimony, whether the guard was acting wantonly, rather than in the supposed performance of his duty, or otherwise stated, whether it was believed by him at the time to be reasonably necessary to shoot, I should perhaps exercise the discretion which rests in me in favor of submitting the question to a jury in the state court; but there is no conflict of testimony, and the suggestion that different minds might draw different inferences from undisputed facts furnishes no reason why I should abdicate my responsibility to decide in this proceeding whether the guard, in shooting at the fleeing deserter, acted in the supposed discharge of his duty. That he did so act is clear. There is no room for reasonable inference to the contrary. It is conceded that he acted without malice or ill will. His good faith is not impugned. That he was not criminally reckless of the result of the shooting is shown by his holding his fire until those seen by him in the line of fire were out of the way. The fact that in the excitement of pursuit, with his attention upon the fugitive, then on lower ground, he failed to see the pedestrians 400 feet ahead, and

on higher ground, does not, under the agreed facts, show recklessness. That it seemed to the guard reasonably necessary to shoot is clear. The guard was lame and lately discharged from the hospital; the deserter was apparently gaining upon him, disregarding the order to halt, determined to escape, and continuing to flee even after the shot in question and still another shot was fired, and actually evading discovery for two hours longer. Even though it might have been more prudent for the guard to have exercised still greater care in the prevention of this deplorable accident, such fact would not convert this accident into a crime, for he was not engaged in an unlawful act. A homicide by misadventure, under such circumstances, is not criminal. United States v. Meagher (C. C.) 37 Fed. 875. The case presented is, to my mind, such that if I were sitting with a jury on a trial of the case I should deem it my duty to instruct the jury to acquit the respondent.

That the United States may protect itself by bringing this proceeding through its judicial department is established by authority. It is only necessary to cite the matter of Fair, before referred to. Indeed, in view of the breadth of the statute, it should scarcely be necessary to cite authorities upon that proposition. In my opinion, the state authorities have acted prudently in bringing the matter to the attention of the civil tribunals, and thus affording this opportunity for a judicial determination of the prisoner's liability to prosecution.

Finding, as I do, upon this question of fact, that in firing the shot in question the prisoner was acting in the discharge of his duty as a soldier in the military service of the United States, and that accordingly the state authorities have no jurisdiction to try him for the homicide in question, it becomes my duty to order his release.

It is accordingly ordered that he be released from confinement, and that he be restored to the military service of the United States, according to the terms of his enlistment.