## Ex parte SCHLAFFER.

### (District Court, S. D. Florida. May 17, 1907.)

1. **ARMY AND NAVY—ENLISTED SOLDIER—IMPRISONMENT BY CIVIL AUTHORITIES.**

   While an enlisted soldier in time of peace may be subjected to arrest and punishment for violation of a municipal ordinance the same as a civilian, yet where any punishment is sought to be inflicted which will interfere with the performance of the duties which he owes to the United States the utmost good faith is required from the civil authorities, and any unfair or unjust discrimination against the offender because he is a soldier, or departure from the strict requirements of the law, or any cruel or unusual punishment, may be inquired into by the federal courts in proceedings instituted by his commanding officer.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Army and Navy, §§ 6, 79.]

2. **HABEAS CORPUS—ARREST OF SOLDIER—MUNICIPAL ORDINANCE—VIOLATION —EXCESSIVE PUNISHMENT.**

   The imposition of a sentence of imprisonment for 60 days on a soldier by the authorities of a city for a violation of a city ordinance, where the act charged did not result in nor threaten any injury to person or property, is unwarranted, and the soldier will be discharged on a writ of habeas corpus on petition of his commanding officer.

## Petition for Writ of Habeas Corpus.

This is a writ of habeas corpus issued upon the petition of the commanding officer at the post of Key West, alleging that one Joseph Schlaffer, an enlisted soldier of the United States army, was held in the custody of the jailer of the city jail of Key West contrary to law. Upon the return of the writ, it was objected by the respondent that the petition was not signed by the party alleged to be held in custody, but by another person, and should therefore be dismissed; but such objection was overruled, and it was held that a commanding officer of troops had such interest in the presence, custody, and control of an enlisted man as would justify his signing a petition for a writ of habeas corpus, although the soldier had not signed the same. The soldier then being present in court, the sheriff answered that he held him by a regular commitment from the city court, showing that he had been regularly tried and convicted for a violation of a city ordinance and fined $25, and, upon default in payment of the same, was sentenced to imprisonment for 60 days. Upon a hearing upon affidavits under oath, there was testimony tending to show that before the evening of the arrest there had been a raid upon the soldiers prearranged and premeditated by the police force; that the soldier had been arrested for a violation of a city ordinance, neither constituting a breach of the peace, nor an injury to person or property, namely, urinating upon the sidewalk; that upon the representation of the police he had been fined, and in default of payment was put to work upon the public streets of the city. In behalf of the respondent it was contended that the civil law was supreme, and any soldier was subject to arrest and punishment by it, regardless of any duty he owed the United States, and notwithstanding his posi-

tion of an enlisted man. In behalf of the petitioner it was contended that an enlisted man was not subject to municipal ordinances, and could not be arrested, held, and punished for a violation of such, relying upon a cited decision of the Supreme Court of Utah. Each party relying upon its position as a matter of law, the facts were not very particularly inquired into.

Theophilus B. Steele, U. S. Atty.
E. M. Semple, for respondent.

LOCKE, District Judge (after stating the facts). While it is recognized that during times of peace the military power in the United States is subordinate to the civil, and that an enlisted man is amenable to the statutory law, and under proper circumstances and on necessary occasions may be subject to arrest and detention for the violation of municipal ordinances, the same as any civilian, yet, where any punishment is sought to be inflicted which tends in any way to interfere with the duty he owes the United States as such soldier, the utmost good faith on the part of the civil authorities is demanded, and any unjust and unfair discrimination against him as a soldier, or departure from the strict requirements of the law, or any cruel or unusual punishment, can be as justly inquired into by the federal courts of the United States as it can be in protecting the interests of the United States in any matter where its necessary governmental agencies are involved.

While it is legally the duty of the commanding officer to see that no unlawful act is committed by soldiers under their command, and the rules of war provide for proper and sufficient punishment, yet the demands of public peace often require that municipal ordinances shall be enforced by the arrest of enlisted men. Just how far punishment which results in depriving the government of the services of its men may be inflicted is a very difficult question. The fifty-ninth article of war provides that soldiers shall be delivered up to be tried by civil authorities only when their acts have resulted in injury to the person or property of a citizen. The charge upon which this man was arrested was in no way claimed to be of an injurious nature to person or property.

While neither the contention made in this case in behalf of the petitioner that the municipal authorities have no legal right to arrest an enlisted man for violations of its ordinances, nor the contention in behalf of the city that the police powers of the city are supreme and that the position of an enlisted man may be ignored and the right to his services by the United States disregarded, can be accepted to the full extent either is claimed, and while I have no authority or desire to act as a court of review of the municipal authorities, it is not considered that it is necessary to inquire fully into the exact legal rights of either party, which would be found to be a happy medium between their conflicting contentions; but the peculiar circumstances of this case satisfy me that it is one in which law and justice require that the prayer of the petition be granted and the soldier restored to the custody of his commanding officer. The relations existing between the police force and the enlisted men, not only at this post, but wherever they may be stationed throughout the country, and the peace and welfare of the community, demand consistent and harmonious action, both

by the officers in command on the one side and the higher municipal authorities on the other, in checking and controlling the forces under each. By such concerted action only can the best interests of the nation and the community be conserved. The police of the city are the conservators of the peace and the protectors of private rights, but it is a fact too well recognized to need comment that they are but men, hard worked and subject to temptations and passions and not infallible, and it would not, perhaps, be saying too much to say there is no more incontrovertible presumption of a policeman's always doing his duty and nothing more, than there is of a soldier always strictly obeying the laws. The law and the community demand as much from one as the other. The sad results of such conflicts between such classes is too recent to be overlooked, and in no city should the soldiers and police be left to assert their imagined rights, or avenge their supposed wrongs, but a fair, just, and controlling influence by the higher powers on the part of both, all acting in perfectly good faith and with an earnest desire for the general good, can alone lead to satisfactory results. The enlisted man should be as obedient and subservient to civil law when called upon, as he is to military law, and the municipal authorities should recognize his peculiar conditions and responsibilities and act in harmony and accord with his officers, who are finally responsible for his presence and well-being.

The enlisted men are within the state and within the city, not in accordance with their own will, but in accordance with the orders of their superior officers, to whom they are answerable, and, although temporarily off duty for a short time, they are constantly subject to the terms of their enlistment and the orders of their officers. If absent from the post without leave, they are liable to be courtmartialed and punished for desertion; if drunk and disorderly, even while on leave, they are liable to punishment under the rules of war, although it be time of peace, and it is not considered that they should be treated and held in any detention or attempted punishment, the same as though they were answerable to no other power. Their position and the requirements of their constant duty demand, in behalf of the national government from the municipal authorities, such a recognition of its rights as would accomplish a preservation of the peace and the observance of the city ordinances as would in no way affect their duties as soldiers.