**BIRSCH et al. v. TUMBLESON, Sergeant of City of Norfolk.**

Circuit Court of Appeals, Fourth Circuit. April 9, 1929.

No. 2801.

W. R. Ashburn and William H. Venable, both of Norfolk, Va., for appellants.

J. S. Barron, of Norfolk, Va., for appellee.

Before WADDILL and PARKER, Circuit Judges, and SOPER, District Judge.

WADDILL, Circuit Judge. This is an appeal from an order of the United States District Court for the Eastern District of Virginia, dismissing petitions of appellants for writs of habeas corpus and remanding the petitioners to the custody of the authorities of the state of Virginia.

Appellant Birsch, a federal game warden, with appellants Mercer and Capps, state game wardens designated by the state authorities to assist Birsch in enforcing the federal game laws near Back Bay, in Princess Anne county, Virginia, on the evening of the 4th day of February, 1927, while attempting to arrest three hunters, who were alleged to have been in the act of shooting wild ducks out of season and after sundown, contrary to the federal game law, and to have conspired to violate the federal Migratory Bird Treaty Act (16 USCA §§ 703–711), killed two of said hunters, namely, Allen Lee Waterfield and John L. Bonney.

The facts and circumstances, as set forth in the pleadings and upon the proofs, are substantially as follows:

That appellants, on the afternoon of February 4, 1927, at about 5 p. m. landed from a federal motorboat on the east side of Back Bay, and proceeded south in the direction in which a large number of shots had been heard on the preceding night; that while so proceeding they heard a number of shots fired in the direction in which they were going; that they found automobile tracks at the edge of the marsh, and after following such tracks, about 7 o'clock, located a Ford automobile parked near the edge of the marsh; that, when the appellant officers were about 25 or 30 steps from the car, they saw three hunters coming out of the marsh toward the car; that the officers sank down in the grass to avoid being observed, and the three hunters came on to the car, and one of them, afterwards ascertained to be Allen Lee Waterfield, threw a wild duck into the automobile, and another, subsequently found to be James L. Bonney, threw a paper bag containing shells into the machine; that upon these indications of the intentional violation of the federal game laws the officers stood up and turned flash-lights on the hunters, and Birsch said, "Men, we are game wardens; you are all under arrest; don't move"; that all three of the hunters had shotguns in their hands; that Officer Mercer also called out, "You are under arrest, men; don't move"; and that Capps said, "Stand still, men; no-

body will hurt you"; that the hunters stood still, guns in hand, in an attitude of apparent submission, and the officers advanced toward them without the presentation of any weapons, and expecting no trouble, Capps and Mercer continuing to hold the flash-lights, with the light shining on the hunters, as they advanced; that when the officers had covered seven or eight steps the two hunters, Allen Lee Waterfield and James L. Bonney, suddenly threw their guns to their shoulders, pointed them at the officers, and one of them called out, "Stop! Stop! Don't come no closer;" and another said, "Don't come another step;" that Mercer and Capps instantly extinguished their flash-lights and fell to the ground, and as they dropped one of the hunters fired; that, being placed in this situation by the unlawful act of the hunters, the officers returned the fires immediately; and that the hunters Allen Lee Waterfield and James L. Bonney fell, and the third hunter, Lonnie Waterfield, ran.

The sergeant of the city of Norfolk, in whose custody appellants were, in his return to the writ averred that petitioners had laid in wait in the marsh near the automobile for some time before the hunters returned to their car, which was substantially the testimony adduced at the trial of appellant Mercer in the state court; that the only other witness present, except petitioners, denied that petitioners gave notice to the hunters that they were officers of the law, and that the hunters were under arrest; that nothing was said by any of the petitioners, but that they opened fire immediately upon the hunters; that the hunters had not fired first, and no shells from the hunters' guns were found, though search was made following the shooting, except for one discharge, the contents of which had gone through the top of the hunters' automobile; that Bonney was shot in the side, and Allen Lee Waterfield in his back, thus demonstrating, as claimed by respondent, the falsity of the charge that the hunters were facing and firing upon the officers; that the deceased Allen Lee Waterfield had run 12 or 15 steps away from the petitioners when he was shot in the back and killed, and his son, Lonnie Waterfield, had run some 40 or 50 steps when he was shot at while fleeing, the shots passing over his head.

The appellants, upon discovering that the hunters Allen Lee Waterfield and James L. Bonney had been wounded, hurriedly conveyed them by automobile to St. Vincent's Hospital in Norfolk, and upon reaching the hospital it was ascertained that they were both dead. Appellants immediately surren-dered themselves to the state authorities and were placed under bond to answer for the offenses charged against them, and were subsequently and regularly indicted in the circuit court of Princess Anne county severally for the murder of Allen Lee Waterfield and James L. Bonney, and the attempted murder of Lonnie Waterfield, and thereafter asked a change of venue. The indictments were accordingly transferred to corporation court No. 2 of the city of Norfolk for trial. In the latter court they elected to be tried separately, and appellant A. Floyd Mercer was placed on trial on the indictment charging him with the murder of Allen Lee Waterfield, and was found guilty, and his confinement fixed at 10 years in the state penitentiary. An appeal was taken from this judgment, and the case was reversed by the Supreme Court of Appeals of Virginia, and a new trial awarded (Mercer v. Commonwealth, 150 Va. 588, 142 S. E. 369), and the subsequent trial thereof, in the corporation court No. 2 of the city of Norfolk, resulted in a hung jury. The three cases are still pending in that court, awaiting trial and the outcome of this action. Appellants are now held on bail.

Appellants, by appropriate assignments of error, challenge the correctness of the judgment of the court below dismissing their petitions, denying them discharges from custody for the offenses with which they are charged, and remanding them to the state court; for the reason that the cases were proper ones for the exercise by the District Court of the discretion reposed in it to discharge petitioners from further detention by the state authorities, pursuant to the provisions of title 28, § 453, USCA.

The assignments of error are 12 in number, but they one and all relate to and involve the same question, as to whether or not the appellants were entitled to be discharged upon writs of habeas corpus in advance of trial upon the merits of the case, because appellants were federal officers engaged in the lawful, proper, and necessary discharge of their duties as such officers, in the enforcement of the criminal laws of the United States, when it is alleged they committed the offenses charged against them, and that hence they were held in violation of the Constitution of the United States and the statutes enacted in pursuance thereof, and that the state courts were without jurisdiction to try them.

The issuance of writs of habeas corpus is provided for by title 28, § 453, USCA, which is as follows: "The writ of habeas corpus shall in no case extend to a prisoner in jail

unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof; or is in custody in violation of the Constitution or of a law or treaty of the United States; or, being a subject or citizen of a foreign state, and domiciled therein, is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, or order, or sanction of any foreign state, or under color thereof, the validity and effect whereof depend upon the law of nations; or unless it is necessary to bring the prisoner into court to testify. R. S. § 753."

The above-quoted section has frequently been under review by the federal courts of last resort, as well as by inferior federal courts, and just what can and cannot properly be done thereunder seems fairly well settled under the present state of the authorities; the conclusions largely depending upon the facts and circumstances of the particular case. Under said section, when a person is in custody under process of a state court for an alleged offense against the laws of the state, and it is claimed (a) that he is in custody in violation of the Constitution or of the laws or treaties of the United States, or (b) for an act done or omitted to be done by him in pursuance of the laws of the United States, the District Courts of the United States and the judges thereof, the United States Circuit Judges, the judges of the United States Circuit Courts of Appeals, the Supreme Court of the United States and the justices thereof have plenary jurisdiction to inquire into the cause of such confinement by means of habeas corpus, and to discharge those so confined, if their detention is in violation of the Constitution or of the laws or treaties of the United States, or if in custody for an act done, or omitted to be done, in pursuance of the laws of the United States. U. S. C. tit. 28 (28 USCA) §§ 451, 452, 453; Montgomery's Manual of Federal Jurisdiction and Procedure, § 404.

In Castle v. Lewis, 254 F. 917, Judge Sanborn, speaking for the Circuit Court of Appeals for the Eighth Circuit said at page 920: "It does not follow, however, from the grant of this jurisdiction, that the duty is imposed upon the court or its judges to discharge the petitioner in every case immediately after the hearing, even if the court or the judge is of the opinion that the confinement is unwarranted. The injunction of the statute is to hear each case on the writ of habeas corpus summarily and thereupon 'to dispose of the party as law and justice may require.' This direction leaves to the wise judicial discretion of the court, or judge, the time and mode in which the granted power shall be used. That discretion should be so exercised 'in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution' ([Ex parte Royall] 117 U. S. 251, 6 S. Ct. 740, 29 L. Ed. 868), in the light in each case, of the nature of that case, whether it involves an alleged violation of the Constitution or a confinement for an act done in pursuance of a law of the United States, whether it is a case of urgency where a failure to discharge the petitioner immediately will or may substantially delay the enforcement of the laws of the United States, or seriously interfere with the operation of its government or the administration of its affairs, or a case which really involves only the question whether the issues presented shall be first tried in the federal court or in the state court, and in the light of the clearness and certainty with which the material facts are established, whether they are admitted or proved beyond doubt, or are involved in uncertainty and the subject of conflicting testimony which naturally invokes the verdict of the jury."

In this case, Judge Sanborn considered the question as to the disposition of cases in which the trial court was wholly without jurisdiction, and those in which officers were endeavoring to make arrests in cases of urgency where their failure to do so would result in seriously interfering with the enforcement of the laws of the United States or the operation of its government, citing authorities covering each of the two classes of cases discussed; and in referring to the latter class—that is, cases of urgency—he said, at page 921 of 254 F.: " * * * The cases, however, which present such facts, are exceptional, and the general rule and settled practice of the courts and judges of the United States, in cases which do not fall within the classes just enumerated, is to so exercise their discretion, in view of the delicate relation of the national and the state courts, as to refuse to interfere by writ of habeas corpus with the custody of the state court, at least until after the trial of the petitioner

therein" (citing Ex parte Royall, 117 U. S. 241, 251, 6 S. Ct. 734, 29 L. Ed. 868; Drury v. Lewis, 200 U. S. 1, 6, 8, 26 S. Ct. 229, 50 L. Ed. 343; In re Lincoln, 202 U. S. 178, 181, 182, 26 S. Ct. 602, 50 L. Ed. 984).

The more recent decisions of the federal courts, in considering the course to be adopted by the trial courts in passing upon applications for writs of habeas corpus, arising in cases before them—that is, when and when not they should exercise the discretion reposed in them to discharge petitioners in advance of their trial on the merits, or defer action pending such trial—have almost invariably favored the latter course, save in cases of manifest urgency. In the very recent leading case from the Supreme Court of the United States, U. S. ex rel. v. Tyler, 269 U. S. 15, 18, 19, 46 S. Ct. 1, 70 L. Ed. 138, this is strikingly shown. In re Neagle, 135 U. S. 1, 10 S. Ct. 658, 34 L. Ed. 55, involved the discharge on habeas corpus of a United States deputy marshal from custody on a charge of homicide committed in the performance of his duty to guard and protect a justice of the Supreme Court. In re Loney, 134 U. S. 372, 10 S. Ct. 584, 33 L. Ed. 949, concerned the right to arrest a witness for perjury while giving his testimony in a contested congressional election case; and Wildenhus' Case, 120 U. S. 1, 7 S. Ct. 385, 30 L. Ed. 565, sought the discharge of a member of the crew of a foreign merchant vessel in custody in violation of international treaty.

The present case involves the question of the right to discharge on habeas corpus proceedings in advance of trial on the merits federal officials who claim the protection of the laws of the United States from prosecution for alleged offenses committed by them while in the discharge of their official duties, and who, because of their official status in connection with the alleged offense with which they are charged, seek to be discharged from custody and not subjected to trial on the merits.

The determination of this class of cases necessarily involves the consideration of the facts of the particular case, as manifestly there may be those in which federal officers are entitled to such discharge. But it must be made clear that their conduct was reasonably free from doubt, that is to say, where they exercised only such authority as was necessary and proper in their capacity as federal officers, in arresting those believed to have violated the federal laws, and did not, in so doing, exceed such authority, and that what

they did was necessary, or at least believed by them to be necessary, to properly discharge their duties, or for their own protection.

In dealing with this latter class of cases, this court has had occasion to consider at least two cases of importance, namely, Anderson v. Elliott, 101 F. 609, and the State of West Virginia v. Laing et al., 133 F. 887, and in each of these cases this court affirmed the decisions of the trial court discharging petitioners in advance of trial on the merits in the state courts. These two cases are in a way unusual in that they present considerations which would not ordinarily arise, and in which the propriety of the acts of the federal officers was beyond question, and involved matters necessary to the orderly conduct of the business of the courts of the United States, and the enforcement of the federal laws. In Anderson v. Elliott, officers of the federal court, in the execution of a writ of possession issued in a suit in equity pending in a federal court, were arrested and imprisoned by a justice of the peace of the state of North Carolina. While so held, warrants were issued against said officers, and service of process had upon them to recover damages for large amounts in civil suits. This court affirmed the judgment of the trial court discharging the petitioners from custody and further detention by the state authorities while engaged in the lawful performance of their duties under order of the federal court in execution of its lawful decrees and orders.

The case of West Virginia v. Laing et al. involved the question of the right to discharge on a writ of habeas corpus officers of the federal court and those serving as members of a posse comitatus, who were engaged in the arrest of a dangerous and desperate character, who had defied the officers of the law, and had previously, as an active member of an armed mob, resisted and prevented service of process upon him. As the officers approached his house from the front, he attempted to escape from the rear, and, upon encountering other officers, refused to surrender, drew his pistol upon them, and was in the act of placing himself in the position to fire from behind a tree upon the officers, who were in the open, when they shot and killed him.

These two cases but uphold the law, and indicate that the federal courts will, in emergencies such as existed in the two cases, maintain the federal authority, as otherwise the federal government, its courts, and officers

would quickly fail of any efficient force in governmental matters.

The cases of Castle v. Lewis (C. C. A.) 254 F. 917, supra, and of U. S. ex rel. Drury v. Lewis (C. C.) 129 F. 823, the latter a decision of Judge Acheson, of the Western district of Pennsylvania, affirmed in U. S. ex rel. Drury v. Lewis, 200 U. S. 1, 26 S. Ct. 229, 50 L. Ed. 343, will be found peculiarly applicable to the facts in the present case. In U. S. ex rel. Drury v. Lewis, supra, Judge Acheson, after reviewing the circumstances of the shooting, said at page 825 of 129 F.:

"Thus far the facts are not open to dispute under the testimony. But as to the circumstances attending the shooting of Crowley the evidence is conflicting, and leads to opposite conclusions of fact as one or other version of the affair given by the witnesses is accepted. Dowd testifies, and the petitioners have produced other evidence tending to show, that as Crowley fled he was called on several times by Dowd, who followed him, to halt, with warning that unless he halted Dowd would fire; that Crowley did not halt, but continued his flight, and to prevent his escape behind or through a lumber pile Dowd fired, and that Drury did not order Dowd to fire, and was not connected with the shooting save by the fact that he ordered the arrest of any person coming from the arsenal. On the other hand, two witnesses who were present (Mrs. Long and Miss Terwillerger) testify that before the shot was fired Crowley stopped, turned around, and, facing the pursuing soldier (Dowd), threw up his hand, said, 'Don't shoot,' 'I will come back,' or 'I will give up,' and just then Lieut. Drury said, 'Fire!' and Dowd fired the shot that killed Crowley. The testimony of at least one other witness tends to corroborate the account of the transaction given by the two named women as above recited. It is not for me to say whether or not the witnesses who have testified thus on the part of the commonwealth are mistaken.

"In view of all the evidence herein, should this court interfere to prevent the trial of the petitioners upon the indictment in the state court—take the petitioners out of the custody of the authorities of the state, and discharge them finally without trial by any civil court in the regular administration of justice? This is the question which confronts me. * * * "

And the learned judge further said, at page 827 of 129 F.:

" * * * But in the present case there is a serious conflict of evidence involving an important issue of fact, namely, whether Crowley was shot while fleeing to escape arrest, or after he had stopped and turned around, and virtually had surrendered. It is very clear that on a habeas corpus hearing such as this it is not competent for the court to determine upon conflicting evidence whether the person under indictment in the state court is guilty or innocent of the offense of which he is accused. Ex parte Crouch, 112 U. S. 178, 180, 5 S. Ct. 96, 28 L. Ed. 690. Whether the shooting of Crowley was justifiable or excusable must be determined by the state court to whose jurisdiction the petitioners are subjected. That the petitioners will be protected by that court in all their legal rights is not to be doubted."

This case was appealed to the Supreme Court of the United States, and in the opinion of that tribunal (U. S. ex rel. Drury v. Lewis, supra) Mr. Chief Justice Fuller, after reciting from the opinion of the lower court, as set forth in the quotation therefrom given above, bearing upon the question of the conflict in the circumstances attending the shooting, and in considering the propriety of the action of the court appealed from, said at page 6 of 200 U. S. (26 S. Ct. 231):

"In Baker v. Grice, 169 U. S. 284, 290 [18 S. Ct. 323, 42 L. Ed. 748], an appeal from the final order of the Circuit Court of the United States for the Northern District of Texas, in habeas corpus, it was said: 'The court below had jurisdiction to issue the writ and to decide the questions which were argued before it. Ex parte Royall, 117 U. S. 241 [6 S. Ct. 734, 29 L. Ed. 868]; Whitten v. Tomlinson, 160 U. S. 231 [16 S. Ct. 297, 40 L. Ed. 406]. In the latter case most of the prior authorities are mentioned. From these cases it clearly appears, as the settled and proper procedure, that while Circuit Courts of the United States have jurisdiction, under the circumstances set forth in the foregoing statement, to issue the writ of habeas corpus, yet those courts ought not to exercise that jurisdiction by the discharge of a prisoner unless in cases of peculiar urgency, and that instead of discharging they will leave the prisoner to be dealt with by the courts of the state; that after a final determination of the case by the state court, the federal courts will even then generally leave the petitioner to his remedy by writ of error from this court. The reason for this course is apparent. It is an exceedingly delicate jurisdiction given to the federal courts by which

a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the federal court, upon a writ of habeas corpus, be taken out of the custody of the officers of the state and finally discharged therefrom, and thus a trial by the state courts of an indictment found under the laws of a state be finally prevented. Cases have occurred of so exceptional a nature that this course has been pursued. Such are the cases In re Loney, 134 U. S. 372 [10 S. Ct. 584, 33 L. Ed. 949], and In re Neagle, 135 U. S. 1 [10 S. Ct. 658, 34 L. Ed. 55], but the reasons for the interference of the federal court in each of those cases were extraordinary, and presented what this court regarded as such exceptional facts as to justify the interference of the federal tribunal. Unless this case be of such an exceptional nature, we ought not to encourage the interference of the federal court below with the regular course of justice in the state court.' "

At page 7 of 200 U. S. (26 S. Ct. 231) the learned Chief Justice further stated:

"But it is contended on behalf of the government that the state court was absolutely without jurisdiction to try petitioners for the killing of Crowley, because the homicide was committed by them 'while in the lawful performance of a duty and obligation imposed upon them by the Constitution and laws of the United States.' The argument is that Crowley had been guilty of the crime of larceny and could have been indicted and prosecuted on the charge of felony in the District Court of the United States under section 5439 of the Revised Statutes [18 USCA § 87], or under section 5391 [18 USCA § 468], the United States having jurisdiction over the Allegheny Arsenal property and the Pennsylvania laws making what Crowley is alleged to have done a felony. Hence that it was the duty of petitioners to arrest Crowley and to surrender him to the federal authorities for prosecution. And it is insisted that the fact is 'established that Crowley met his death while attempting to escape arrest.' But there was a conflict of evidence as to whether Crowley had or had not surrendered, and it is conceded that if he had, it could not reasonably be claimed that the fatal shot was fired in the performance of a duty imposed by the federal law, and the state court had jurisdiction.

"The Circuit Court was not called on to determine the guilt or innocence of the accused. That was for the state court if it had jurisdiction, and this the state court had, even though it was petitioners' duty to pursue and arrest Crowley (assuming that he had stolen pieces of copper), if the question of Crowley being a fleeing felon was open to dispute on the evidence; that is, if that were the gist of the case, it was for the state court to pass upon it, and its doing so could not be collaterally attacked. The assertion that Crowley was resisting arrest and in flight when shot was a matter of defense, and Ex parte Crouch, 112 U. S. 178 [5 S. Ct. 96, 28 L. Ed. 690], is in point."

In the light of the authorities cited, and of the reasoning and conclusions announced, particularly in the last quotation from the United States Circuit Court for the Western District of Pennsylvania (U. S. ex rel. Drury v. Lewis, supra), and in the decision of the Supreme Court of the United States, affirming the same, there can be little doubt that the action of the trial judge herein should be affirmed. The case falls clearly within the rule therein prescribed, as well in respect to the direct testimony adduced as to the circumstances under which the tragedy occurred.

Affirmed.