LIMA v. LAWLER.

Misc. No. 7037.

District Court, E. D. Virginia.

Nov. 16, 1945.

imposed upon him by the police justice of that city upon a charge of assaulting one, A. W. Davis. At the time of the occurrences here related, Davis was night desk clerk at Hotel Martin, on Bank Street, in Norfolk, and petitioner was on duty in the vicinity of the hotel in the capacity of naval shore patrolman, pursuant to assignment by appropriate authority. At the time petitioner was wearing on his arm the distinguishing brassard and carrying a night stick customarily used while so engaged. He had been transferred to the Hampton Roads area only a short while previously.

In the course of his duty the attention of petitioner was attracted to a disturbance on the street near the entrance to the hotel and with another shore patrolman detailed to duty with him, proceeded to the scene. A beer garden next door to the hotel was closing and a considerable number of members of the armed services and civilians were on the street. Upon approaching the place the two shore patrolmen observed a struggle taking place between Davis and a naval enlisted man. Shortly before nearing the participants, the patrolman accompanying petitioner stopped to observe or confront a civilian whose demeanor was threatening and thus petitioner approached Davis and the sailor alone. At the time Davis was holding the sailor by his skivie shirt and kerchief. Petitioner called upon Davis to release the sailor to his custody. Davis refused, stating that he was holding the sailor until the arrival of the city police, whom he had called, in order that he might prefer charges against him in the police court of the city. Petitioner repeated his demand and Davis continued his refusal. Davis was then warned that unless he released the sailor, petitioner would strike him and upon continued refusal on the part of Davis, petitioner struck him several times on the forearm with the night stick. Davis testified that he was also struck across the nose. During the course of the argument between petitioner and Davis, the enlisted man (the subject of the controversy) escaped; but his skivie shirt and kerchief were torn from him and retained by Davis. Davis testified that his purpose in holding the enlisted man was to turn him over to the city police, assigning as his reason a belief that the shore patrolman would merely carry him around the corner and free him. He testified to previous trouble with enlisted men who, as this one, had undertaken to visit guests at the hotel,

Harry H. Holt, Jr., U. S. Atty., and Walkley E. Johnson, Asst. U. S. Atty., both of Norfolk, Va., for petitioner.

J. W. Old, Jr., City Atty., and Donald W. Shriver, Asst. City Atty., both of Norfolk, Va., for respondent.

HUTCHESON, District Judge.

This is an application for a writ of habeas corpus filed by Albert F. Lima, an enlisted member of the naval forces, seeking his release from the custody of the Sergeant of the City of Norfolk, by whom petitioner was held for nonpayment of a fine

which was out of bounds to members of the armed forces. Petitioner testified it was his purpose to obtain custody of the enlisted man in order that he might properly report the incident to the shore patrol in accordance with his orders in such cases.

Petitioner has sought a writ of habeas corpus, contesting the jurisdiction of the police court of the city of Norfolk, upon the ground that he was acting in pursuance of a law of the United States.

It was conceded at bar that petitioner was acting pursuant to orders properly given him and no question has been raised concerning his authority to make arrest of an enlisted man nor concerning the authority of the United States Navy to set up the shore patrol. The power of the Navy to create the organization known as the shore patrol and the authority of those assigned to duty to make arrests in proper cases appears so obvious I deem a discussion of those points unnecessary.

This petition for a writ of habeas corpus is sought under the following provisions of 28 U.S.C.A. § 453: "The writ of habeas corpus shall in no case extend to a prisoner in jail unless where he is in custody under or by color of the authority .of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, * * *."

It is the latter alternative which is relied upon by the petitioner in seeking this writ.

The question presented has engaged the attention of the Courts upon a number of occasions and while it would not be of material assistance to go into the particulars of each, a discussion of some of those reported may be helpful in considering the facts of the case at bar.

The Federal courts have been unanimous in the realization of the delicacy of the jurisdiction given them by the statute and have seen fit to deprive the state courts of jurisdiction only after careful consideration and the application of several tests.

In Birsch v. Tumbleson, 4 Cir., 1929, 31 F.2d 811, at page 814, 65 A.L.R. 725, the Court, speaking through Judge Waddill, aptly stated the controlling principles in such cases in the following language: "The determination of this class of cases necessarily *involves the consideration of the facts of the particular case,* as manifestly there may be those in which federal officers are entitled to such discharge. But it must be made clear that their conduct was reasonably free from doubt, that is to say, where they exercised only such authority as was necessary and proper in their capacity as federal officers, in arresting those believed to have violated the federal laws, and did not, in so doing, exceed such authority, and that what they did was necessary, or at least believed by them to be necessary, to properly discharge their duties, or for their own protection." (Italics supplied.)

The case of In re Neagle, 1890, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55, affords us an interpretation by the Supreme Court of the statutory provision. The facts in that case were that Neagle, a deputy marshal of the United States, was discharged on habeas corpus from custody under commitment by a magistrate of California on a charge of homicide. It appeared that he was directed by the President of the United States, through the Attorney General, to guard and protect a Justice of the Supreme Court of the United States, and in the discharge of that duty killed one Terry. The Court, in its opinion, said that when Neagle took the life of Terry he was acting as a deputy marshal under authority of the law, and that he was not liable to answer in the courts of California on account of his part in the transaction. It was also decided that no act done in pursuance of a law of the United States lawfully enacted can be an offense against the laws of a state, and that an act done in obedience to rules and regulations lawfully prescribed by one in the executive department of the government, or in obedience to the direction of one of the heads of such departments, acting within the scope of his authority, is to be regarded as an act done in pursuance of a law of the United States, although no statute of the United States has in express terms directed the doing of the act.

In Brown v. Cain, D.C.E.D.Pa.1944, 56 F.Supp. 56, the most recent case brought to my attention, which was decided by Judge Kirkpatrick, the opinion contains an able and comprehensive discussion of the guiding principles. The petitioner in that case was a member of the United States Coast Guard Auxiliary Temporary Reserve, and had been assigned to guard duty at a shipbuilding plant. In the course of his duty a disturbance occurred in which he was struck by a brick thrown by a member of the crowd which he was attempting to

dispel. Immediately after the brick was thrown petitioner noticed one member of the crowd running away. He called on him to halt, and when his order was disregarded he fired, killing the suspected assailant. He was arrested and indicted by the grand jury of Delaware County for murder and was in custody of the warden of the county prison when he brought his petition for a writ of habeas corpus. The opinion sets out three tests which should be applied to this type of case. At page 58 of 56 F. Supp., the Court says: "The first question is, was the act for which the relator is held, an act done in pursuance of the law of the United States? The answer does not depend upon guilt or innocence of the relator or his amenability to State law had he not been a government officer, but solely upon whether he had authority from the United States to arrest persons guilty of the offense for the commission of which he was trying to make the arrest, whether he had reasonable cause to believe and did honestly believe that the person he shot was guilty of the offense for which he was trying to arrest him, and whether, in attempting to make the arrest he acted within the scope of his authority and used no more force than he honestly and reasonably believed was necessary."

As to the test of the degree of force that is reasonable to be exercised by an officer, the Court cites Castle v. Lewis, 8 Cir., 254 F. 917. The facts in the Castle case show that three prohibition officers received a report that a car of liquor was coming into the county. They proceeded to a strategic point and lay in waiting. A car approached. They recognized the car and some of the occupants. The officers knew the occupants to be permanent residents of a nearby city. It was also brought out and not disputed that the officers had not seen the occupants in the possession of whiskey and had no warrant for their arrest. As the car passed they called to the occupants to stop and when they failed to do so shot at the car, killing one of its occupants. It is to be noted that the petitioners in this case were acting merely on suspicion. They had no warrants and had seen the suspects commit no offense. Under this state of facts the Circuit Court found that the District Court in refusing the writ of habeas corpus was correct in finding that the petitioners had used undue force in effecting the arrest and accordingly acted beyond the scope of their duty. The Court, in its opinion, stated that the measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary. Attorneys for the respondent cite this case as authority. That case may be distinguished from the case at bar by citing the fact that petitioner, Lima, was presented with what he thought was an undesirable interference with his authority to take into custody the enlisted man being held by Davis; there is not presented a situation in which the force is inflicted upon a mere suspect, as in the case of Castle v. Lewis, supra; and there is a decided difference between the use of a night stick and the use of a pistol in making an arrest. Davis was holding the enlisted man with his hand and it would seem reasonable to inflict blows upon his hand in order to force him to relinquish his grip.

The second test to be applied in deciding this type of case, as set out in Brown v. Cain, supra, is stated by the Judge in his opinion to be: "The next principle to have in mind is that it is not sufficient that the judge weighing all the testimony comes to the conclusion that the act was in line of duty, necessary and, therefore, in pursuance of the law of the United States. Facts pointing to that conclusion, must be either admitted or uncontradicted or, at least, supported by so great a preponderance of evidence that a reasonable mind construing it can hardly come to any other conclusion. Regardless of the conclusion which the judge himself might reach, if there is a substantial conflict of evidence as to basic or controlling facts the Federal Court should refuse to exercise its discretion to release the relator and should remand him to the custody of the State authorities for trial by the State Court."

The Court cites as authority for the "conflict of testimony test", Drury v. Lewis, 1905, 200 U.S. 1, 26 S.Ct. 229, 50 L.Ed. 343. In that case an army officer and a soldier were indicted for murder and manslaughter and held for trial in a state court for having killed a person not in military service. The killing occurred as the officer and soldier attempted to apprehend a person suspected of stealing Government property. The suspects were discovered off the military limits. The soldier who did the shooting testified that he commanded

the subject to halt several times and shot only when he saw that escape was inevitable. The Government offered some corroborating evidence, the extent of which is not reported. Two women who witnessed the incident testified that suspect turned around, threw up his hands and was in the act of surrendering when the officer ordered the soldier to shoot. At least one other witness corroborated this account. The Court found there was a material conflict of evidence as to one of the basic facts and that this conflict should be decided by trial in the state court. Accordingly, the Supreme Court upheld the denial of the writ by the lower court. It is to be noted that the weight of evidence bore out the account as related by witnesses for the respondent and this evidence showed that the suspect actually made an offer of surrender and was surrendering when he was shot. This led to the conclusion that the soldier used an undue amount of force in carrying out his duty. Attorneys for the respondent in the case at bar cite Drury v. Lewis as authority for upholding its contention that there exists sufficient conflict of testimony in the instant case as to warrant a dismissal of the writ by this Court. The facts disclosed at the hearing do not indicate the existence of such a conflict of testimony as to a material element. It seems the only controversial issue was the amount of force used by the petitioner in his efforts to obtain custody of the enlisted man being held by Davis for arrest; and that issue, in turn, narrows down to whether or not the petitioner hit Davis in the face with his night stick. There were three witnesses in behalf of the petitioner who testified that he merely struck Davis on the forearm and the Government produced a signed statement given by Davis to the naval authorities shortly after the occurrence of the events in which he related blows on the forearm only, although at the hearing before this Court, Davis unequivocally testified that he was struck in the face by the petitioner. If the Government has proved its remedy by a preponderance of evidence, the Federal court should exercise jurisdiction and grant the writ.

The third test as set out by the Court in Brown v. Cain is stated in the opinion as follows: "Lastly, the discretion of the Federal Court is limited by the nature of the occasion upon which its power is invoked. Even though it be clearly proved that the act for which the relator is held was the act of a government officer in pursuance of a law of the United States, he should be remanded to the State Court for trial unless the case is one of urgency where the failure to discharge the prisoner will or may substantially delay the enforcement of the laws of the United States, or seriously interfere with the operation of its government or the administration of its affairs. Castle v. Lewis, supra; Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868."

The case of Kennedy v. Tyler, 1925, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138, was decided on the basis of the "exceptional emergency" test and reviews the cases in which the courts have decided whether a particular set of circumstances constitute such an emergency. The Kennedy case involved the right of a New York State Court to assume government control of the Seneca Indians and their property where such control had been exercised by the state at the request of the Seneca Tribes for many years. It was held this did not constitute such a case of exceptional emergency as to warrant Federal interference. The Court, however, cited In re Neagle, supra, as an illustration of a case which would involve interference by state authorities with the operations of departments of the general government, and accordingly warranted an issuance of a writ of habeas corpus by the Federal Court. In cases where there has been an actual interference with a Federal officer in his attempt to carry out his duty of law enforcement, courts have held that such cases met the "exceptional emergency" test.

In Campbell v. Waite, 8 Cir., 1898, 88 F. 102, the Court granted a petition of habeas corpus sought by an agent of the Veterans' Administration, who under orders of his superior was attempting to obtain evidence of fraudulent pension claims. In the course of his investigation he promised certain parties immunity from arrest if they would surrender certain information and also added that if such information was incorrect they would be amenable to Federal law. The officer was charged with the violation of the State Blackmail Law. The Supreme Court, in upholding the granting of the petition by the lower court, stated on page 108 of 88 F.: "The arrest of federal officers or other persons for acts lawfully done in discharge of their duties under federal laws impairs to a certain extent the authority and efficiency of the gen-

eral government; and for that reason no court, so far as we are aware, has ever hesitated in that class of cases to discharge a petitioner from custody by writ of habeas corpus, when it appeared on a hearing of the case that the petitioner was entitled to be released from imprisonment."

■ Attorneys for the respondent have made some point of the fact that the petitioner has not exhausted his remedies of appeal in the state court. Ordinarily, before the remedy of habeas corpus is available one should exhaust all regular remedies through appeal, but the courts have held that this principle does not apply to this type of case. In United States v. Lipsett, D.C.W.D.Mich.1907, 156 F. 65, a soldier, acting as a guard, killed a civilian in his attempt to prevent the escape of a military prisoner. The Court, in disposing of the instant question, went so far as to state that the Federal Court must assume jurisdiction over the matter and prevent further action in the state court, giving as reason for this action the principle that the state has no jurisdiction over a person when he is acting under the authority of the United States. This principle was first laid down in the case of In re Neagle, supra.

Attorneys for the respondent cited Howard v. Dowd, D.C.N.D.Ind.1938, 25 F.Supp. 844. This case does not appear applicable, even though the Judge granted the writ before the remedies of appeal had been exhausted, because the case did not involve a Federal officer purported to be acting in the scope of his duty, but on the other hand involved an eighteen year old boy who had been accused of the crime of kidnapping and deprived of his constitutional right to be represented by counsel.

The facts in Birsch v. Tumbleson, supra, were that a Federal game warden in the company of two state game wardens came upon a trio of suspected violators and in the course of making his arrest shot and killed two of the suspects. The testimony produced at the hearing on the part of the petitioner attempted to prove that the Federal officer had been advanced on with drawn rifles before he shot. The testimony of the respondent, on the contrary, showed that the suspects had attempted and were in the act of surrendering when they were fired upon. This testimony was corroborated by the fact that one of the suspects had been shot in the back and the other in the side. The Court held that under the rule laid down in Drury v. Lewis, supra, the case presented a material conflict of evidence and the officers were amenable to a state trial on the merits. From a recital of the facts it appears that the case at bar may be distinguished from the Birsch case on the ground that the respondent's testimony has not shown a material conflict of evidence as to an essential element in the case. This case is annotated, 65 A.L.R. 725.

■ The authorities reviewed make it clear that the granting or denial of a petition for a writ of habeas corpus lies within the discretion of the reviewing judge. In exercising this discretion the courts are faced with the problem of weighing the necessity of preserving the orderly administration of Federal functions against an innate hesitancy to deprive the state courts of jurisdiction in a matter concerning an alleged violation of state law.

■ It is conceded in the case at bar that the petitioner was acting in pursuance of a law of the United States within the meaning of 28 U.S.C.A. § 453, and that under such orders as applied to shore patrolmen in the United States Navy it was his duty to take into custody any naval enlisted man found disturbing the peace. The petitioner while on duty discovered an enlisted man engaged in disturbing the peace. He was on duty to take care of just such a situation. He attempted to take the enlisted man into his custody and his authority to so act was contested by a civilian who was holding the man for arrest by the local police. Although a private citizen, except where the rule is changed by statute, has the right to arrest without a warrant one who commits a breach of the peace in his presence, 6 C.J.S., Arrest, p. 607, § 8, such detention is only until a proper officer of the law is available. Davis testified that the petitioner was not going to take the enlisted man into custody. Petitioner testified that he was going to do so. At this point there is presented the first possible consideration as to a variance on the part of the petitioner from the scope of his duty. Can it be held that it was the duty of the shore patrolman to yield to the demands of a private citizen concerning the custody of an enlisted man accused of breaking the peace? It was the duty of the petitioner to report the man to the proper naval authorities and he will be presumed to be acting in accordance with that duty

452

until otherwise shown. It is the opinion of the Court that the authority of a shore patrolman to arrest a naval enlisted man is concurrent with that of the local police and it follows that it was the duty of Davis to surrender custody of the enlisted man to the petitioner, knowing, as he did, that petitioner was a naval law enforcement officer.

Davis' denial of petitioner's demand to release the enlisted man constituted a clear interference with petitioner's duty. This interference on the part of Davis made necessary the use of force by the petitioner. This produces the second controversial point. Did the petitioner exercise reasonable force from this point on? Davis was holding the enlisted man, he refused to relinquish him, a blow on the arm would appear to be the only forceful method of effecting release. The petitioner admits striking Davis twice on the arm with his night stick. Davis testified that petitioner struck him about the face. Without holding that a blow on the face would constitute unreasonable force to the extent of making petitioner amenable to the state court, the Court finds that petitioner proved by a preponderance of the evidence that he struck Davis only on the forearm and that such action constituted reasonable force in the exercise of his duty.

Having disposed of the two essential facts of the petitioner's duty in the instant case and the necessary force to perform such, we need only consider whether the case is endowed with the "exceptional and imperative circumstances" necessary to warrant Federal interference with the action of a state court.

The state court in this instance has found a Navy shore patrolman guilty of assault under the circumstances of the case; fined him and upon nonpayment of the fine remitted him to the city jail.

In deciding this feature of the case it must be borne in mind that the country is still in a state of war and there are still millions of men in the armed service of the country. The local police of areas in which large military bases are located have found it physically impossible to properly handle the many disturbances that inevitably occur with a large influx of such population. The shore patrol was created to assist in taking care of this situation. To now hold that a member of the shore patrol is amenable to the state courts for an act such as the petitioner committed in the course of his duty would constitute a material impairment of the effectiveness of a vital arm of the United States Government.

 Upon applying the principles laid down in the reported decisions to the facts of the case at bar, it appears that petitioner has met the test required by the court and that the writ should be granted.

Accordingly, an order will be entered discharging petitioner from the custody of the respondent and restoring him to his status as a member of the naval forces and as such amenable to appropriate authorities.