## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Emory A. Addison

June 2, 1995

Case No. (Criminal) M763

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter comes before the Court on the charge of driving under the influence of alcohol in violation of § 18.2-266 of the Code of Virginia. For the reasons stated below, the Court finds the defendant guilty.

On December 30, 1994, Carl D. Moore, a Metropolitan Washington Airport Authority (MWAA) policeman, was on his way to work in his personal vehicle and not in uniform. He was driving south on Route 28 near its intersection with Sterling Boulevard (in Loudoun County) when he first saw the defendant at about 1:40 p.m. heading south on Route 28. Moore testified that the speed limit on Route 28 was 55 miles per hour and that when he first saw and began following the defendant, the defendant was traveling at 70 to 75 miles per hour. The defendant was driving erratically, changing lanes without signals, crossing over the far right and far left solid side lines marking Route 28, and cutting off drivers of other cars in a reckless and dangerous manner. As Moore followed, the defendant continued on Route 28 into Fairfax County where the defendant exhibited the same behavior so frequently that Moore lost count of the number of traffic infractions. The defendant accelerated to 80 miles per hour and

continued to change lanes erratically, crossing onto the right and left shoulders of the road and endangering other vehicles by cutting in front of them and cutting them off. From the outset, Moore used his vehicle radio to try to get a uniformed on-duty officer to come to the scene. Moore advised the dispatcher every time the defendant came close to striking other vehicles. Moore testified that it was not until the light at Route 28 and Williard Road (about 8 miles from Route 28 and Sterling Boulevard) that the defendant first stopped at a stoplight. Moore testified that the travel time from Sterling Boulevard to Williard Road was about 15 minutes. Moore also testified that Williard Road crosses Route 28 about ¼ mile south of Route 50.

The defendant testified (for purposes of his motion to suppress) that he got on Route 28 at Route 7 and headed south. He testified that there are six stoplights between Sterling Boulevard and Williard Road (plus stoplights at each of those intersections). He testified that traffic was busy at the time and that he stopped at two lights along Route 28 between those intersections. The defendant testified that there were barrels and a concrete barrier guarding construction on the left side of Route 28 south, so he could not have crossed over the left shoulder line. He also testified that Route 28 south had a guardrail on the right side, precluding his crossing the right shoulder line. He testified that he never weaved across lanes. On cross-examination, when asked if he had weaved in traffic and almost caused ten accidents, the defendant responded, "That's an exaggeration."

John Ivey, another MWAA officer on his way to work and not in uniform, testified that he heard one of Moore's calls over his radio near the intersections of Route 28 and Route 606. Ivey at that time saw the defendant in the left lane heading south on Route 28. Following the defendant, Ivey saw him cross the left yellow line onto the left shoulder of the road, weave to the center lane, and cross over the right shoulder of the road. Ivey testified that the defendant was exceeding the speed limit, weaving in and out of traffic erratically and dangerously, and almost struck four other vehicles in the process. Ivey testified that the stoplight at Williard Road was the first time that the defendant stopped. Ivey also testified that the defendant's driving was so dangerous that he (Ivey) followed the defendant rather than report to work.

When the defendant stopped at Williard Road, Moore pulled his car in front of the defendant and Ivey pulled his car beside or behind the defendant. Both Moore and Ivey testified that they showed the defendant their MWAA identification cards through the windows of the defendant's ve-

hicle and Moore instructed the defendant to get out. Moore and the defendant then exchanged words. The defendant testified that at the Williard Road stoplight Moore instructed him to get out of the vehicle and put it in park; the defendant responded "Who the hell are you?"; Moore again instructed him to get out and the defendant replied he might if Moore identified himself; and Moore then displayed his badge and the defendant put his vehicle in park and got out.

Moore testified that he smelled a strong odor of alcohol about the defendant's person, that the defendant's eyes were red and glassy, and that the defendant's speech was slurred. Moore asked the defendant if he had been drinking and the defendant replied that he had but did not say how much.

Moore advised the defendant of the implied consent law by which one who operates a motor vehicle on a highway is deemed to have consented to have blood and/or breath samples taken to determine the alcohol and drug content of his blood. Va. Code § 18.2-268.2. Moore then asked the defendant to take a field sobriety test to which the defendant agreed. In response to Moore's questions, the defendant stated that he was taking no medication and had no physical problem that would impair his performance on a field test. Moore gave the defendant a one-leg balance test, which the defendant failed. Moore gave the defendant a "walk and turn, heel to toe" test, which the defendant failed. Moore gave the defendant a "touch your nose with your finger" test, which the defendant partially passed and partially failed. Moore then placed the defendant under arrest, at about 2:05 or 2:10 p.m. By the time Moore placed the defendant under arrest, a uniformed on-duty Fairfax County policeman was on the scene. That policeman's jurisdiction included the location where the defendant had been stopped.

The parties stipulated that at the time Moore stopped the defendant Moore was outside of the jurisdiction of Metropolitan Washington Airport Authority, although for much of the "chase" he was within the jurisdiction. He lost jurisdiction at about Route 28 and Route 50, or anywhere from ¼ to 1 mile (depending on the testimony) from where the defendant was stopped. The parties agreed that Moore is therefore to be treated as a private citizen at the time he stopped the defendant's car.

The defendant moved to suppress the arrest and to strike the Commonwealth's case. The Court took the motions under advisement. Thereafter Moore testified that after placing the defendant under arrest, he took the defendant to the nearest Fairfax County Police Station. There the defen-

dant was offered a breath or blood test and chose a breath test. He had nothing to eat or drink before the test. He burped once during the first attempt to administer the test and the test was successfully re-administered (without any burp) a second time. The Commonwealth offered the results of that test as Exhibit 1, to which the defendant objected. The Court took under advisement the admission of Exhibit 1.

For the reasons stated below, the motion to suppress and to strike *all* of the Commonwealth's evidence is denied. The motion to suppress the arrest by Moore and all that followed the arrest (including the results of the breath test) is granted. The objection to the introduction of Exhibit 1 is sustained. The defendant is nonetheless found guilty of driving under the influence of alcohol based upon his erratic and dangerous driving; Moore's observations about the defendant's odor of alcohol, red and glassy eyes, and slurred speech; the defendant's statement that he had been drinking; and the defendant's failure to pass the field sobriety tests.

This Court must initially decide under what circumstances and in what manner one private citizen may arrest another. The Commonwealth argues that it may occur for felonies or other breaches of the peace committed in his presence. The defendant asserts that one private citizen may arrest another only for a commission of a felony in his presence.

The Court holds that one private citizen may arrest another for a felony or for a breach of the peace committed in his presence. *See, Byrd v. Commonwealth,* 158 Va. 897, 902 (1932); *Lima v. Lawler,* 63 F. Supp. 446, 451 (E.D. Va. 1945); 2A Michie's Jurisprudence, *Arrest,* § 4 (1993).

The Court holds that the defendant committed a breach of the peace. A breach of the peace is the offense of disturbing the public peace or a violation of public order or public decorum. *Byrd,* 158 Va. at 902-03. The Court finds that the defendant was driving erratically, speeding, changing lanes without signaling, crossing over both the left and right shoulders of the road, and cutting off and nearly striking other vehicles. The defendant clearly endangered other motorists. This Court finds that driving in such a manner constitutes a breach of the peace. (Other jurisdictions have held that driving while intoxicated is a breach of the peace. *See, Romo v. Texas,* 577 S.W. 2d 251, 253 (Tex. 1979).)

The Court further holds that Officer Moore's arrest of the defendant was illegal. A private citizen may make a warrantless arrest of a person who commits a breach of the peace in his presence, but such detention is only authorized until a proper officer of the law is available. *Lima,* 63 F. Supp. at 451. In *Lima,* where a desk clerk detained a naval enlisted man for

disturbing the peace, the court found that the clerk should have surrendered custody over to the shore patrolman who later came upon the scene. *Id.* at 452. Although the Court disagrees with the defendant's contention that there is a different standard of probable cause to warrant a stop by a private citizen as opposed to a police officer, the Court finds that the arrest of the defendant was illegal. Moore, acting as a private citizen at the time of the stop, was authorized only to detain the defendant until the proper authorities arrived.

The Court recognizes that the stopping of the defendant by Moore did not constitute an "arrest" as that term is traditionally defined. But the right of one private citizen to stop another as done here must ultimately derive from the right to arrest for breach of the peace. Therefore, if no such arrest right exists, the right even to stop is in grave doubt.

Moore had no right to place the defendant under arrest and transport him to a police station after the arrival of a Fairfax County police officer having proper jurisdiction. The Court further holds that since the arrest was illegal, the results of the breath test are inadmissible for two reasons. First, a search stemming from an unlawful arrest is invalid. *United States v. Watson*, 783 F. Supp. 258, 264 (E.D. Va. 1992). Second, the results of a blood or breath test provided by § 18.2-268.2, Virginia's implied consent law, are admissible only after a valid arrest, because otherwise the defendant's consent is invalid. *See, Durant v. City of Suffolk*, 4 Va. App. 445, 448-49 (1987). Because the Court finds that the results of the defendant's breath test are inadmissible, the defendant's additional arguments to exclude the test results are moot.[1]

Despite the inadmissibility of the results of the breath test, the Court holds that the defendant was guilty of driving under the influence of alcohol, based on the evidence gathered prior to the illegal arrest. If the results of the breath test were admissible, the Commonwealth might be entitled to a rebuttable presumption that the defendant was intoxicated. *See, Overbee v. Virginia*, 227 Va. 238, 244 (1984). However, since the breath test results are not admissible, the Commonwealth must prove through other evidence that the defendant was intoxicated while driving. *See, Overbee*, at 244. An

---

[1] The defendant makes two further arguments pertaining to the implied consent law. First, he contends that he did not give valid consent to the breath test because he was not advised that he must be arrested within two hours of the alleged offense. Second, he contends that the breath alcohol certificate is invalid because it states the results in terms of "breath alcohol content" rather than "blood alcohol content."

admission by a defendant that he was drinking, coupled with his appearance and lack of coordination, is sufficient to support a conviction for driving under the influence of alcohol. *Wheeling v. City of Roanoke*, 2 Va. App. 42 (1986). In *Wheeling*, the defendant admitted to a police officer that he had consumed six to eight beers, performed poorly on field tests administered to him by the officer, and displayed slurred speech, watery eyes, a pale complexion, and an unsteady gait. *Id.* at 44. This evidence supported the finding that the defendant had been driving while intoxicated. *Id.*

Based on the evidence presented, this Court finds that the defendant was driving while intoxicated. For at least eight miles, he drove erratically and dangerously, crossing left and right shoulder lines, nearly hit many other vehicles, and reached speeds of 80 miles per hour where the speed limit was 55 miles per hour. After he was stopped, the defendant admitted to Moore that he had been drinking. The defendant smelled of alcohol, his eyes were red and glassy, and his speech was slurred. The defendant failed two field sobriety tests and performed poorly on a third. This evidence, without the breath test, is sufficient to find the defendant guilty of driving while intoxicated.